Herman W. and Gay K. Fletcher v. Commissioner.
Herman W. & Gay K. Fletcher v. Commissioner
Docket No. 29870.
United States Tax Court
1951 Tax Ct. Memo LEXIS 123; 10 T.C.M. (CCH) 793; T.C.M. (RIA) 51264; August 28, 1951
John J. Smith, Esq., for the petitioners. John E. Mahoney, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency in petitioners' income tax for 1944 of $4,643.78. The issue is whether payment in 1944 of attorney's fees and disbursements by petitioner Herman W. Fletcher, hereinafter called petitioner, for services rendered in attending to his interest as income beneficiary and remainderman of a trust and to his interest in connection with his father's estate was a nontrade or nonbusiness expense. Several other adjustments are not contested. Some of the facts are stipulated. Findings of Fact The stipulated facts are found. Petitioners are husband and wife, *124 residing in Monterey, California. They filed their 1944 income tax return with the collector for the fifth district of New Jersey. Petitioner's father, hereinafter called decedent, created a trust by agreement dated May 18, 1940, which was to terminate ten years from the date of his death. Upon his death in 1942, five-sixteenths of the income of that trust became payable to petitioner and in 1952, upon termination of the trust, five-sixteenths of the principal will become payable to him. During the year 1943 the major asset of the trust consisted of 4,370 shares, out of 4,371 shares issued and outstanding, of the common capital stock of Titeflex Metal Hose Co. At all times during 1943 petitioner was on active duty with the armed forces and was stationed outside of the United States. Named as an executor of decedent's estate, he was obliged to disqualify himself when sent overseas. Prior to his departure he appointed Warren P. Smith and Allen Evarts Foster as his attorneys in fact. Smith had been a business advisor for three generations for the Fletcher family. The principal of the trust was charged with payment of decedent's estate taxes. To assist the trust in meeting this *125 liability, the trustees and executors proposed to borrow $500,000 from a Florida bank with the Titeflex stock pledged as security. Smith strongly opposed this plan; he was also doubtful of one of the trustee's qualifications to control the business of Titeflex. For these reasons he engaged Mason, a partner in a New York law firm, to protect petitioner's interests in the trust. Mason met with the trustees and objected to the plan to borrow money, both as a business matter and on the ground that it would be, in his opinion, the most costly method from petitioner's point of view as a beneficiary because of the interest expenditure and because that expenditure was chargeable against trust principal and would therefore be lost as a trust income tax deduction. He then suggested several alternative proposals, one of which he succeeded in getting adopted after extended negotiations. This plan provided for an exchange of the 4,370 outstanding shares of Titeflex stock held by the trust for 4,370 shares of Class A voting common stock and 4,370 shares of Class B non-voting common. The Class B stock was to be sold to officers and employees of Titeflex and to the beneficiaries of the trust with *126 the exception of petitioner. This plan was executed and provision was made for the payment of the estate taxes. Subsequently, Mason successfully opposed the proposal of the executors of decedent's estate that an arbitrary value be assigned to the Titeflex stock for Federal estate tax purposes. He gained adoption of his alternative plan that an expert appraisal be had, which resulted in a lower valuation than had been arbitrarily determined. In addition to these services, Mason represented to the trustees and directors of Titeflex that petitioner, being a five-sixteenth income beneficiary and remainderman, while overseas in the armed forces should have representation on the board of directors of Titeflex. That proposal was rejected but Mason succeeded in making an arrangement whereby he was sent advance notice of board meetings so that he could and did attend in petitioner's interest. During 1943 Mason performed services in connection with petitioner's interest in decedent's estate by examining the accounts of the estate from time to time, by urging the sale of a certain property owned by the estate, and by suggesting to the executors that they obtain an extension of time within *127 which to file the estate tax return. For these services petitioner paid Mason's law firm in 1944 $7,500 in legal fees, plus disbursements of $167.26 for postage, telephone, telegraph, and travel expenses. The legal fee was allocated as follows: For services rendered in connection with promotion of the plan for raising funds with which to pay the estate taxes and obtaining an expert and reduced appraisal value of Titeflex stock for estate tax purposes, $4,000; for gaining informal representation on the board of directors of Titeflex in petitioner's behalf and attendance and participation in meetings of the board, $3,000; and for services rendered in petitioner's interest in connection with decedent's estate, $500. There was no dispute about the extent of petitioner's interest as a beneficiary or interest as a remainderman of the trust. Mason was never engaged as attorney for the trustees, the trust, Titeflex, or the estate, or any beneficiaries other than petitioner, and he never received fees from them. In 1944 petitioner received $77,357.29 as his taxable distributive share of the income of the trust. The expenditure for legal counsel and disbursements are expenses incurred *128 in relation to the collection of income, or in the management, conservation or maintenance of property held for the production of income. Opinion Petitioner's interest as a five-sixteenths income beneficiary and ultimate remainderman of the trust established by his father was clearly property. Blair v. Commissioner, 300 U.S. 5; Beulah Eaton McAllister v. Commissioner, (C.A. 2), 157 Fed. (2d) 235, certiorari denied 330 U.S. 826. "Section 23 (a) (2) * * * treats the trust as an entity for producing income comparable to a business enterprise * *." Bingham's Trust v. Commissioner, 325 U.S. 365, 374; and see Carl W. Braznell, 16 T.C. 503. Petitioner's situation was thus roughly comparable to the large stockholder of a prosperous corporation. He owned property not only capable of producing income, but which did, in fact, in the tax year yield him upward of $75,000. It seems manifest that any expense conducive to the preservation and maintenance of such property would be deductible under section 23 (a) (2), Internal Revenue Code. [1]Edward Mallinkrodt, 2 T.C. 1128, affirmed (C.A. 8), *129 146 Fed. (2d) 1, certiorari denied, 324 U.S. 871. What petitioner's attorney accomplished for him was most nearly comparable to the investment advice which such a large investor might normally be expected to secure. Cf. Higgins v. Commissioner, 312 U.S. 212. Its purpose and result was both to enhance the income of petitioner's property and to aid in preserving it. Elma M. Williams, 3 T.C. 200. That the trust, or its other beneficiaries, or the corporation whose stock constituted the trust's principal asset, may have obtained incidental benefits could be of significance only if the attorney was employed for that purpose. See Nancy Reynolds Bagley, 8 T.C. 130. It might then be said, as respondent in fact contends, that the services were being performed for the trust or the corporation, *130 and that petitioner's payment was the voluntary discharge of another's obligation. Cf. North Star Granite Corp., 21 B.T.A. 222; Welch v. Helvering, 290 U.S. 111. But here the attorney did not act for anyone but petitioner, and in fact had differences of opinion with both the trust and the corporation which were being advised by their own legal counsel. It seems to us of little moment whether, as respondent also urges, the attorney's advice turned out to be poor, although we by no means concur in that conclusion. See Bingham's Trust v. Commissioner, supra.But regardless of its wisdom, it was given on petitioner's behalf, at his request and no other's, and could have had no purpose unless it was thought to be of value. The reasonableness of the fees is not questioned. We view respondent's determination as erroneous to the extent of the disallowance of the attorney's fees and disbursements. Nancy Reynolds Bagley, supra; Elma M. Williams, supra.
Decision will be entered under Rule 50. Footnotes
1. "SEC. 23. * * * "(a) Expenses. - "(2) Non-Trade Or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."↩