DeCourcey **MARTIN** and Louisa S. Martin, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 8051.

United States District Court
D. South Carolina,
Charleston Division.

Jan. 12, 1966.

Louis F. Oberdorfer, Asst. Atty. Gen., Lyle M. Turner, George A. Hrdlicka, Leon W. Vaseliades, Dept. of Justice, Washington, D. C., Terrell L. Glenn, U. S. Atty., Columbia, S. C., and Thomas P. Simpson, Asst. U. S. Atty., Charleston, S. C., for defendant.

HEMPHILL, District Judge.

Plaintiffs seek recovery of $10,812.90 principal, $1,320.65 interest and $941.00 principal, $58.49 interest, of income tax "illegally and erroneously assessed and collected from plaintiffs,[1] for the calendar years 1958 and 1959, together with interest from the date of payment." Jurisdiction of this forum is conferred by 28 U.S.C. § 1346(a) (1).[2] Motion for summary judgment has heretofore been denied (August 12, 1965) and counsel given opportunity and direction to explore and present the facts.[3]

Contained in the Stipulation of Facts herein are explanatory paragraphs:

7. In 1932, Louisa Martin, then Louisa Simmons, created an irrevocable spendthrift trust with the Central Hanover Bank & Trust Company (later changed to the Hanover Bank), reserving unto herself only the right to change the beneficiary. In 1957, Mrs. Martin engaged an attorney for the purpose of setting aside the trust, agreeing to pay as legal fees 25 per cent of the gross value of all stocks, cash and securities returned to her as a result of his efforts. Suit was filed in the Supreme Court of the State of New York, and on November 3, 1958, the court issued a final order approving the revocation of the trust indenture, allowing the final accounting,

Joab M. Dowling, of Dowling, Dowling, Sanders & Dukes, Beaufort, S. C., and Norman W. Stevenson, of Barnwell, Whaley, Stevenson & Patterson, Charleston, S. C., for plaintiffs.

1. If tax was due, Louisa Martin owed; the filing of a joint return made necessary and proper the participation of husband DeCourcey Martin as a party plaintiff.

2. Which provides: (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of: (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

3. See Order of August 12, 1965 attached hereto as Exhibit A hereof. Son was substituted after demise of parent.

and directing the distribution of the trust estate to Mrs. Martin. At the date of distribution, the trust corpus had a fair market value of $269,078.81. The entire income of the trust had been distributed to Mrs. Martin annually under the terms of the indenture. Total fees paid by the taxpayers amounted to $67,454.67, $40,000.00 of which was paid and claimed as a deduction in 1958 and the balance of $27,454.67 in 1959. In addition, legal fees of $2,593.03, paid by the trustee in 1958, were also deducted by the taxpayers on their return filed for that year.

8. The taxpayers contend that said fees are deductible under the provisions of § 212 of the Internal Revenue Code of 1954. Section 212, insofar as applicable to the present controversy,[4] provides for the deductibility of all ordinary and necessary nontrade or nonbusiness expenses paid by a taxpayer during the taxable year (1) for the production or collection of income or (2) for the management, conservation, or maintenance of property held for the production of income.

9. The Commissioner of Internal Revenue determined that the legal fees paid by the taxpayers in 1958 and 1959 in connection with the proceedings to terminate the trust were capital expenditures and accordingly, added these expenses to the basis of the property recovered.

Section 263[5] of the 1954 Code provides in general that no deductions shall be allowed for capital expenditures. It is the position of the defendant that legal fees incurred in acquiring title to property constitute a part of the cost of the property, are not deductible expenses, and should be capitalized.

■ Plaintiff concedes that Section 212 merely defines the area in which nonbusiness expenses may be deducted, provided that they otherwise satisfy the conditions for deductibility, one of these conditions being that the expenditure must not be capital in nature. A capital expenditure is not regarded as a charge against current income and is not deductible therefrom as an "ordinary and necessary expense," whether it is made in the course of business or whether it is made in relation to the nonbusiness situations specified in Section 212. Bowers v. Lumpkin, 140 F.2d 927, 928–929, 151 A.L.R. 1336 (4th Cir. 1944). Accordingly, the issue before the Court is a determination of the legal character of the attorney's fees involved, i. e., whether they constitute capital or ordinary expenses.

The Bowers case, supra, arose out of a set of facts not dissimilar to the general picture here. Taxpayer's husband, by will, devised certain stock in a coca-cola (vending) enterprise toward establishment of an orphanage, placing in trust the remaining one-half of the stock

---

4. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax. (26 U.S.C. 1958 ed., Sec. 212.)

See also: Treasury Regulations on Income Tax (1954 Code):

SEC. 1.212–1 *Nontrade or nonbusiness expenses.*

*       *       *       *       *

(k) Expenses paid or incurred in defending or perfecting title to property * * * constitute a part of the cost of the property and are not deductible expenses. * * *

*       *       *       *       *

5. Title 26 U.S.C. § 263 (Before 1964 amendment)

(a) General rule.—No deduction shall be allowed for—

(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

with taxpayer as the life-tenant cestui que trust. She, in expressed attempt to protect her interest, purchased from the trustees the intended orphanage stock, and South Carolina instituted action to invalidate the sale. In the ensuing litigation she was victorious, but incurred expenses, including legal fees of $250 in 1936 and $26,798.22 in 1937, which she deducted from her gross income in preparing her income tax returns for these years. After disallowance by the Commissioner of Internal Revenue, she paid under protest and, in due time, brought suit. In ruling that legal expenses involved in defending or protecting title to property are not "ordinary and necessary expenses" deductible as nontrade or nonbusiness expenses from gross income in order to compute the taxable net income, but constituted a capital charge which should be added to the cost of property and taken into account in computing the gain or loss in case of subsequent sale, the Circuit opinion explained:

Hence it may not be doubted that Congress, in amending § 23 of the Internal Revenue Code by the Revenue Act of 1942, used the phrase "all the ordinary and necessary expenses" under the caption "Non-Trade or Non-Business Expenses" in the same sense and with the same limitations that it had previously used in connection with trade and business expenses. It is contended that the phrase "all the ordinary and necessary expenses" in the amendment covers more ground than it did in the original act because the amendment expressly authorizes a deduction for expenses paid "for the management, conservation, or maintenance of property held for the production of income"; and the word "conservation" is said to be particularly pertinent in the pending case where the expenses were incurred in the protection of income producing stock from adverse attack. But the term "conservation" can be given effect, if it is limited to expenses ordinarily and necessarily incurred during the taxable year for the safeguarding of the property, such as the cost of a safe deposit box for securities. The term cannot be given the meaning contended for by the taxpayer without losing sight of the purpose which Congress intended to accomplish and the settled meaning that the phrase "ordinary and necessary expenses" has been given in the administration and re-enactment of the federal income tax statutes.

Plaintiff seeks foundation for her claim in the terms of two separate but coordinate special powers of attorney of June 11, 1957. The authority conferred on Joab Dowling, Esq., Attorney (and fee recipient) is stated:

\*　　\*　　\*　　\*　　\*　　\*

My said Attorney-in-Fact is authorized, if he deems it advisable, to employ counsel for the purpose of setting aside a trust at the Chemical Corn Exchange Bank of New York made for the benefit of Louisa S. T. Simmons under the Wilson Estate and/or a trust in the Hanover Bank of New York identified as Trust U/I m/b and for Louisa S. Simmons; that he is authorized to contract with counsel so employed to pay them on a contingency basis up to a sum equivalent to twenty-five (25%) per cent of the gross value of all stocks, cash and securities returned to me through the efforts of said counsel.

\*　　\*　　\*　　\*　　\*　　\*

To discuss with the proper officer or officers of the Hanover Bank of New York a certain trust known as Trust U/I m/b for Louisa S. Simmons, and to request from said bank any information desired by him and to receive said information if available; to request said bank to make changes in investments in said trust, to investigate any and all investments now made by said Trustee and to employ professional assistance, if necessary, to assist him.

\*　　\*　　\*　　\*　　\*　　\*

■ This Court is mindful that the powers of attorney are of special and limited nature and authority. A special power of attorney is to be strictly construed, to carry out, instead of defeating the purpose of appointment, but so as to sanction only such acts as are clearly within its terms. Holladay v. Daily, 86 U.S. 606, 19 Wall. 606, 22 L.Ed. 187.

It is noteworthy that the payment of fee is for the "setting aside a trust," and there is no mention of production or collection of income. This Court, does not use the fact of omission to deny the relief, instead relinquishes the hope of granting relief on the basis of power of attorney authority as stated.

Excerpts from the affidavit of Joab M. Dowling, Esq., reveal:

" * * * he wrote numerous letters to both of the trustees in an effort to increase her income * *

* * * * * *

"That in an effort to increase Mrs. Simmons' available income position, he visited New York and in early 1957 employed as associate counsel. * * *

* * * * * *

"During the Spring of 1957 * * were able to work out a tentative agreement with the Hanover Bank & Trust Company * * * to bring in approximately $200.00 per month principal and interest which would supplement and augment Mrs. Simmons' income. * * *

* * * * * *

"This tentative arrangement at the Hanover Bank later broke down because the bank attorneys failed to approve and in an effort to try to do something to increase the income * * * it was necessary in the final analysis to bring an action to revoke the entire trust.

■ The diligence, pursuit, and ultimate success of counsel, commendable and deserving of professional praise as it is, unfortunately, does not change here the character of the costs (legal fees) involved. The characterization of the costs incurred in a law suit depends upon the source and nature of the claim, and this turns upon the substantive purpose of the suit as objectively manifested. United States v. Gilmore, 372 U.S. 39, 46–48, 83 S.Ct. 623, 9 L.Ed.2d 570; United States v. Patrick, 372 U.S. 53, 57, 83 S.Ct. 618, 9 L.Ed.2d 580; Garrett v. Crenshaw, 196 F.2d 185, 187 (4th Cir. 1952); Spangler v. Commissioner, 323 F.2d 913, 916 (9th Cir. 1963). In United States v. General Geophysical Co., 296 F.2d 86, 90 (5th Cir. 1961), Judge Wisdom pointed out that "[i]ntent often is relevant in questions of taxation, particularly where the bona fides of a transaction is called into question, but in most cases tax treatment depends on what was done, not why it was done." Here, there is no dispute as to the purpose of plaintiff's suit in and for which these legal fees were incurred. The parties stipulated that plaintiff engaged her attorney "for the purpose of setting aside the trust, agreeing to pay as legal fee 25 per cent of the gross value of all stocks, cash and securities returned to her as a result of his efforts."

■ The applicable regulations in providing specific examples of capital expenditures include the "cost of defending or perfecting title to property." [6] Moreover, the courts, in this and other circuits, have held that where perfection of taxpayer's claim to ownership or title was the essence or real substance of the suit, the costs of litigation were nondeductible capital expenditures. Garrett v. Crenshaw, 196 F.2d 185 (4th Cir. 1952); Bowers v. Lumpkin, 140 F.2d 927 (4th Cir. 1944); Spangler v. Commissioner, 323 F.2d 913 (9th Cir. 1963). Also see Helvering v. Stormfeltz, 142 F.2d 982, 984 (8th Cir. 1944) and Commissioner of Internal Revenue v. Burgwin, 277 F.2d 395 (3rd Cir. 1960).

6. Treasury Regulations on Income Taxes, 1954 Code, Sec. 1.263(a)–2 (26 C.F.R., Sec. 1.263 (a)–2).

In the instant case, plaintiff who had previously relinquished, supposedly irrevocably, legal title to the corpus, instituted suit to terminate the trust and thereby reacquire legal title to and full ownership of the shares of stock held by the bank as trustee. The entire income of the trust had been distributed to her annually under the terms of the trust indenture. If she were unsuccessful in the suit, the trust relationship would have continued in force with legal title and dominion remaining in the trustee. However, the litigation which terminated favorably in her behalf eliminated her mere equitable interest and established her right to and full legal ownership of the stock unencumbered or restricted by any legal rights or title of the trustee. And, the legal fees paid by her to bring about that result, whether viewed as a cost of defending or perfecting plaintiff's "title" to the stock or as a cost essentially of "reacquiring" the stock in order to permit an advantageous sale or investment, are properly capital expenditures to be recovered as an offset against the ultimate sales proceeds produced by them. Such fees were part of her cost in obtaining legal title to and full ownership of the stock unencumbered by the trust and were in no real sense a proper charge against current income. Garrett v. Crenshaw, supra; Bowers v. Lumpkin, supra; Spangler v. Commissioner, supra. Plaintiff's contention, now made on brief, that she subjectively desired to set aside the trust in order hopefully to be in a position to realize greater income is legally immaterial. As the authorities herein demonstrate, it is the objective facts attendant upon the institution of the action to set aside the trust or the essence of that suit, which are determinative. Those objective facts are undisputed; the stipulation entered into by the parties clearly states that the legal fees were incurred "for the purpose of setting aside the trust," and the amount of such fees were measured by the total property to which she succeeded in reacquiring title.

This decision makes no effort to guide the accounting treatment which may now ensue; the *Bowers* case is, however, suggestive.

The Clerk will enter Judgment in favor of defendant.

And it is so ordered.

### EXHIBIT "A"

Motion for Summary Judgment made by the defendant brought this cause for hearing, April 5, 1965, at Charleston, South Carolina.

Summary judgment is a drastic remedy and the trial court must exercise great care in granting motions for same. Garner v. Triangle Publications, D.C., 97 F.Supp. 546 (1951), Van Kirk v. Campbell, D.C., 7 F.R.D. 231 (1947). A litigant's right to trial shall be preserved where there is the slightest doubt as to the facts of the particular case. Rolle Mfg. Co. v. Marco Chemicals, Inc., D.C., 92 F.Supp. 218 (1950). In determining whether the defendant is entitled to summary judgment as a matter of law under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., the District Court must consider only those facts which were not in dispute and the plaintiff's version of any facta, material to the issue involved in the motion which are in dispute, Boop v. Ford Motor Co., D.C., 177 F.Supp. 522, 7 Cir., 278 F.2d 197 (1959). All doubt must be decided against movant and resolved in the light most favorable to the party against whom the motion is directed giving to that party the benefit of all favorable inferences and presumptions that may be drawn from the evidence. Brantley v. Skeens, 185 U.S.App.D.C. 246, 266 F.2d 447 (1959). Caylor v. Virden, 8 Cir., 217 F.2d 739 (1955). Hiern v. St. Paul Mercury Indem. Co., 5 Cir., 262 F.2d 526 (1959).

Upon reading the pleadings of the respective parties to this action, their stipulation of facts, their briefs concerning the motion for summary judgment now before this Court and after hearing oral argument thereon, I have no alternative but to hold that under the ruling in the case of Straub v. Granger, 143 F.Supp.

250 (1956), questions of fact exist which preclude a summary judgment, and necessitate a full hearing on the issues of fact.

Since the matter will be heard before the Court without a jury, counsel may be expected to develop the facts as to the original intent and purpose of the taxpayer in seeking leave of counsel, reasonableness of expenses in relation to management of income property, and the application of such facts to the issues herein. In the event testimony fails to clear up the doubt presently in the trial court's spectrum, motions for dismissal, etc., will be timely made and disposed of.

The Motion for Summary Judgment is, at this time, refused.

And it is so ordered.