**Orlo G. BURCH and Marjorie C. Burch, Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 410, Docket 81–6185.**

United States Court of Appeals, Second Circuit.

Argued Nov. 29, 1982.

Decided Jan. 18, 1983.

James P. Burns, 3rd, Syracuse, N.Y. (James P. Burns, Jr., A. Joseph Scott, III, Hancock, Estabrook, Ryan, Shove & Hust, Syracuse, N.Y., of counsel), for plaintiffs-appellants.

Stanley S. Shaw, Jr., Atty., Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D.C., George H. Lowe, U.S. Atty., Syracuse, N.Y., for the Northern District of N.Y., of counsel), for defendant-appellee.

Before LUMBARD, MANSFIELD and KEARSE, Circuit Judges.

MANSFIELD, Circuit Judge:

Orlo G. Burch and Marjorie C. Burch[1] appeal from a judgment of the Northern District of New York, Howard G. Munson, *Chief Judge,* denying plaintiffs' claim that certain attorney's fees paid by plaintiffs were deductible under § 212 of the Internal Revenue Code.[2] Because we believe that a substantial portion of the attorney's fees were deductible under § 212, we reverse in part and remand for further proceedings.

A. Monroe Burch, father of plaintiff Orlo Burch, died in 1954. His will placed certain stocks in trust, the income to be paid to his wife (Orlo's mother) for life and upon her death the corpus to be distributed to Orlo. Within a few years of his father's death, plaintiff fell deeply into debt. He consulted an attorney, Chester J. Winslow, about ways to protect his remainder interest in the stocks from his creditors. In January 1957 Burch signed a trust instrument drafted by Winslow, under which Burch conveyed "all [his] right, title, and interest" in the stocks to Winslow as trustee. The stated purposes of the trust were to pay off Burch's debts and to provide support for Burch and his family. Shortly after signing this trust instrument, Burch objected to the absence of an express provision permitting him to revoke it. Winslow responded by drafting a second trust agreement, signed by Burch in February 1957, which was identical to the earlier agreement except that the trust was expressly made revocable upon payment of Burch's creditors and the establishment of trusts for his children. In May 1957 Burch signed an agreement which provided that Winslow was to be paid 25% of the value of the trust assets as compensation for his services as trustee under the foregoing trusts. With these agreements in place, Winslow apparently forestalled Burch's creditors by assuring them that they would be paid once Burch received his inheritance.

In 1969 Burch's mother died. By that time the stocks bequeathed to plaintiff by his father and now in the Winslow trust were worth nearly $3 million, and under the terms of the May 1957 agreement Winslow's prospective fee would be approximately $750,000. Shortly after the death of Burch's mother, Winslow submitted both

---

1. Marjorie C. Burch is a co-plaintiff by virtue of the Burch's having filed joint income tax returns for the years relevant here. Since Orlo Burch is the main actor in this case, however, this opinion will refer to him as the plaintiff.

2. Title 26 U.S.C. § 212 provides in relevant part:

"In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

\* \* \* \* \* \*

(2) for the management, conservation, or maintenance of property held for the production of income; . . . ."

the January 1957 and the February 1957 trust agreements to the New York State Surrogate's Court, seeking to have the trust assets delivered to himself and to collect his fee. Burch then retained other counsel and brought suit in the Supreme Court of New York to invalidate both trust agreements, to remove Winslow as trustee (should either agreement be found to be valid), and to have the court determine Winslow's fees. The case was settled a few months later. Under the settlement agreement, Winslow resigned as trustee and accepted $185,000 in legal fees for his services as trustee. The other creditors were paid, trusts were established for the education of Burch's children, and the remaining trust assets were paid to Burch.

In Burch's lawsuit against Winslow, he incurred legal fees of $79,983.10. Burch deducted these legal fees in three approximately equal parts from gross income as reported in his income tax returns for 1971, 1972, and 1973, claiming that they were deductible under § 212(2) of the Internal Revenue Code as expenses for the management or conservation of property held for the production of income. When the IRS objected to these deductions, Burch paid the deficiencies alleged by the IRS and filed suit for a refund in the United States District Court for the Northern District of New York. Before that court the IRS made two arguments for non-deductibility: first, that the attorney's fees were personal expenses, and second, that they were capital expenses. The district court held the attorney's fees non-deductible on the former theory, and did not reach the government's contention that they were capital expenditures.

## DISCUSSION

Section 212(2) of the Internal Revenue Code, note 2, *supra,* permits the deduction of ordinary and necessary expenses incurred for the "management, conservation, or maintenance of property held for the production of income." The corresponding Treasury Regulation makes clear that § 212 does not permit the deduction of expenses "paid or incurred in defending or perfecting title to property." 26 C.F.R. § 1.212–1(k).[3] We have upheld this regulation, see *Galewitz v. Commissioner,* 411 F.2d 1374, 1377 (2d Cir.), *cert. denied,* 396 U.S. 906, 90 S.Ct. 221, 24 L.Ed.2d 182 (1969); *Levitt & Sons v. Nunan,* 142 F.2d 795, 797 (2d Cir.1944) (approving predecessor of § 1.212–1(k)), and the principle it embodies has been affirmed repeatedly by the Supreme Court, see *Woodward v. Commissioner,* 397 U.S. 572, 575, 90 S.Ct. 1302, 1304, 25 L.Ed.2d 577 (1970); *Spreckels v. Commissioner,* 315 U.S. 626, 62 S.Ct. 777, 86 L.Ed. 1073 (1942).

The policy behind 26 C.F.R. § 1.212–1(k) is that expenses incurred in acquiring income-producing property—such as brokerage fees incurred in the process of acquiring stocks—are "part of the cost of the property," *id.,* and are therefore treated as non-deductible capital expenditures. These expenditures are added to the basis of the capital asset in connection with which they are incurred, and are taken into account for tax purposes either through depreciation of the asset or through reduction of the capital gain (or augmentation of the loss) when the asset is sold. *Woodward, supra,* 397 U.S. at 575, 90 S.Ct. at 1304. The test for deductibility of legal fees under § 212 is ordinarily an objective one, looking to the "origin" or "character" of the claim litigated rather than to the subjective "purpose" of the

**3.** Title 26 C.F.R. § 1.212–1(k) provides in relevant part:

"(k) Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in gross income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. Attorney's fees paid in a suit to quiet title to lands are not deductible; but if the suit is also to collect accrued rents thereon, that portion of such fees is deductible which is properly allocable to the services rendered in collecting such rents. Expenses paid or incurred in protecting or asserting one's right to property of a decedent as heir or legatee, or as beneficiary under a testamentary trust, are not deductible."

taxpayer in pursuing it.[4] *Woodward, supra,* 397 U.S. at 577–78, 90 S.Ct. at 1306; *United States v. Gilmore,* 372 U.S. 39, 49, 83 S.Ct. 623, 629, 9 L.Ed.2d 570 (1963).

The government here argues that Burch's legal expenses are properly characterized as expenditures incurred in perfecting Burch's title to his remainder interest in certain stocks, an interest that Burch had earlier assigned over to Winslow. Burch, by contrast, contends that his expenditures were not aimed at securing title to the trust fund assets but at "managing" and "conserving" them. The district court found that the state court litigation arose out of Burch's attempt to counter "(1) Winslow's claim of control over the trust property, and (2) Winslow's claims to twenty-five per cent of the trust corpus."

With respect to the first of these issues, the government appears to be correct in characterizing the lawsuit as involving a dispute over title—in this case, a dispute over whether Burch had the power to revoke the trust and regain legal ownership of the stocks held in trust. Under the terms of the will, by the time he commenced the lawsuit against Winslow, Burch's interest in the stock was no longer limited to that of a remainderman, but, with his mother's death, included all rights to the stock. In the meantime, however, he had executed two agreements expressly ceding "all right, title, and interest" in the stocks to Winslow, "[t]ogether with all and every other right, title, property and interest, therein which first party has, or has a right to dispose of, it being the intention of this conveyance that the first party shall hereby grant to the second party, as trustee, any and all rights as remainderman therein."

Although the second (February 1957) agreement stated that the trust was revocable, there was serious doubt at the outset of Burch's suit against Winslow whether Burch had any right to revest in himself title to the corpus of the trust. First, the February 1957 trust agreement was arguably void since Burch had already transferred all his remainder interest to Winslow by the January agreement, and thus had nothing left to transfer in February. Indeed, Burch so argued in his complaint in the state Supreme Court. Accepting this argument, the January 1957 agreement would presumably be controlling. According to the testimony of one of Burch's lawyers at trial below, under the January agreement Burch "was finished for the rest of his life," because he had "given [the remainder interest] away," and "had no control over his own property." Second, even if the February 1957 agreement were controlling, that agreement itself might turn out to be irrevocable as a practical matter despite the provisions ostensibly making it revocable. This argument, too, was made by Burch himself in his complaint before the state Supreme Court, which stated that even under the trust of February 18, 1957, "revocability was still, in actuality, in the trustee's sole and absolute discretion and not in the hands of [Burch]."

These assertions by the plaintiff undercut his present claim that he "never did lose control of his income producing property"; they suggest at the very least that title to the corpus of the trust fund was seriously in dispute and that litigation was required in order to settle the question. Thus at least part of Burch's legal fees were incurred in a dispute over title to and ownership of the trust assets. The lawsuit was not over title merely in a formal sense,

4. *Woodward* leaves open the possibility that a subjective test might still be appropriate in cases in which litigation affects a taxpayer's title "more or less indirectly." 397 U.S. at 577, 90 S.Ct. at 1306. Because we believe that the effect of the litigation between Winslow and Burch had a direct impact on title, see *infra,* we apply an objective standard, although we believe that it would make no difference to the outcome if a subjective standard were applied.

The "origin of the claim" rule outlined in *Woodward,* of course, "does not contemplate a mechanical search for the first in a chain of events which led to the litigation. . . . The inquiry is directed to the ascertainment of the 'kind of transaction' out of which the litigation arose." *Boagni v. Commissioner,* 59 T.C. 708, 713 (1973).

but in a very practical sense, since if Burch lost he would not be able to exercise any dominion or control over the stocks during his lifetime, or other incidents of ownership, including the right to sell or use the stocks for his own benefit. Burch's legal fees in regaining title to the trust corpus were therefore non-deductible capital expenditures. *Woodward, supra,* 397 U.S. at 575, 90 S.Ct. at 1304; *Lucas v. Commissioner,* 388 F.2d 472 (1st Cir.1967); *Commissioner v. Burgwin,* 277 F.2d 395, 397 (3d Cir.1960); 26 C.F.R. § 1.212–1(k); 1 B. Bittker, Federal Taxation of Income, Estates and Gifts ¶ 20.5.3, at 20–114 (1981); see also *Martin v. United States,* 249 F.Supp. 204, 209 (D.S.C. 1966).

In opposition to this reasoning, plaintiff cites *Matthews v. United States,* 425 F.2d 738, 191 Ct.Cl. 674 (1970). In that case the court approved the deduction of legal fees by the settlor of a trust who had gone to court to revoke it. There, however, unlike the situation in the present case, the taxpayer was found "already [to] possess[ ] . . . all of the important incidents of ownership." *Id.* 425 F.2d at 757. Since in the present case Burch did *not* possess "all of the important incidents of ownership" before the litigation with Winslow, *Matthews* does not apply.

Burch also cites the Tax Court's decision in *Fletcher v. Commissioner,* 10 T.C.M. (CCH) 793 (1951), in which the taxpayer was permitted to deduct the costs of hiring an attorney to represent his interest as beneficiary and remainderman of a trust fund while he was overseas on duty with the armed forces. However, the court found that there was no dispute over title and that the services performed by the attorney were akin to investment advice, payments for which would, of course, be deductible under § 212(2). See *id.* at 794. Thus *Fletcher* is inapposite.

■ Burch further argues that to hold any of his legal fees non-deductible would be to administer him an undeserved "double punishment," since he has already had to undergo the misfortune of being forced to litigate the ownership of property to which he believes he was always entitled. However, for purposes of determining whether a lawsuit is accurately characterized as involving a dispute over title, § 1.212–1(k) "draws no distinction between defenses of title against attacks which are not bona fide and defenses against attacks which are. If the taxpayer incurred expenses in defending his title, the expenses are not deductible, regardless of the nature of the attack." *Galewitz v. Commissioner, supra,* 411 F.2d at 1377.

■ The second major issue in Burch's litigation with Winslow was the amount of Winslow's fees. It appears that at least some of Winslow's fees were for his services in managing the trust corpus. Burch's expenditures in contesting these fees were not incurred for the purpose of restoring his title to trust assets, but for the purpose of reducing the cost of management of the corpus. Reasonable expenses to protect income-producing property from excessive "management" fees demanded by a custodian are deductible under § 212. See, e.g., *Hendrick v. Commissioner,* 35 T.C. 1223, 1234–35 (1961) (expenses of remainderman of trust in maintaining "surveillance" over management of trust corpus deductible under § 212); *Rowe v. Commissioner,* 24 T.C. 382, 384 (1955); 1 B. Bittker, *supra,* ¶ 20.5.3, at 20–115 to –116. Any sums paid to contest Winslow's management fees should therefore be treated as "conservation" or "maintenance" expenses under § 212(2).

■ We therefore conclude that Burch's legal expenses should be apportioned between those devoted to establishing Burch's title to the trust property, which are non-deductible capital expenses, and those devoted to reducing Winslow's fees, at least some of which appear to have been deductible expenses for the management of income-producing property.[5] Such an alloca-

---

**5.** We leave open for the district court on remand the question whether and to what extent Winslow's fees were for his services in helping Burch fulfill his duties as executor of his father's estate and in persuading creditors not to attach Burch's remainder interest. Such fees

tion between deductible and non-deductible expenses is not unusual, see *Larchfield Corp. v. United States,* 373 F.2d 159, 167–68 (2d Cir.1966); *Ditmars v. Commissioner,* 302 F.2d 481, 488–89 (2d Cir.1962), although "a rough approximation is all that can be expected." *Ditmars, supra,* 302 F.2d at 488.

The trial court found that Burch's legal expenses were non-deductible because they were personal expenses. The government now offers this theory as an alternative to the "capital" theory upon which it primarily relies. We note at the outset that since the enactment of § 212(2), the deductibility of expenditures relating to income producing non-business property no longer depends on whether the taxpayer is engaged in a trade or business involving investment in such property. Ordinarily, the deductibility of such expenditures depends on whether they represent a capital investment in the property, in which event they are not deductible, *Woodward, supra,* 397 U.S. at 575, 90 S.Ct. at 1304; *Galewitz, supra,* 411 F.2d at 1375; *Cruttenden v. Commissioner,* 644 F.2d 1368, 1372–73 (9th Cir.1981), or are made for the purpose of conserving or managing the property, which makes them deductible. See *Whittemore v. United States,* 383 F.2d 824 (8th Cir.1967); *Northern Trust v. Campbell,* 211 F.2d 251 (7th Cir.1954). As noted above, litigation fees concerning income producing property would constitute non-deductible personal expenditures only if, under an objective standard, the "origin" or "purpose" of the claim litigated is personal. On this score, the government cites only a single case, *Franklin v. Commissioner,* 39 T.C. 192 (1962), in support of its contention that Burch's expenditures in contesting Winslow's "management" fees were personal. That case is readily distinguishable. In *Franklin,* the taxpayer sought to deduct as management expenses the legal fees he incurred in litigation

against attorneys who had represented him in a will contest. Although some of the taxpayer's debts to the attorneys were satisfied through the sale of taxpayer's income-producing assets, the court found that that fact alone was not enough to make the litigation a matter of "conservation" of assets.

*Franklin* is an application of the principle of *Lykes v. United States,* 343 U.S. 118, 72 S.Ct. 585, 96 L.Ed. 791 (1952),[6] that a taxpayer may not deduct litigation fees as "conservation of property" expenses simply because of a "remote contribution[] [that litigation expenses] might make to the conservation of a taxpayer's income-producing assets by reducing his general liabilities." *Id.* at 125, 72 S.Ct. at 589. Thus, a defendant's litigation fees from a lawsuit over an automobile accident are not spent to "conserve income-producing property" within the meaning of § 212(2) simply because the defendant may have to sell some stocks in order to pay the judgment. We find the *Lykes* standard fully satisfied in the present case. Here a major issue litigated was the amount of fees to be paid to Winslow *as custodian* of income-producing property for his services *as custodian.* We therefore find the nexus between the income-producing property and the legal expenses incurred in contesting Winslow's demands for "management" fees to be adequate under *Lykes* and § 212.

Since Burch's legal expenses were in part non-deductible as capital expenses and in part deductible "conservation" expenses,[7] the judgment is reversed insofar as it holds that Burch's legal expenses in contesting Winslow's demands for "management" fees were non-deductible, and remanded for further proceedings consistent with this opinion. No costs.

would constitute non-deductible personal expenses, as would any legal expenses incurred in contesting them. See *United States v. Gilmore,* 372 U.S. 39, 44–51, 83 S.Ct. 623, 626–630, 9 L.Ed.2d 570 (1963).

**6.** The specific holding of *Lykes,* that legal fees incurred in contesting federal taxes are non-de-

ductible, was later overruled by Congress when it added § 212(3) to the Internal Revenue Code. See *Whittemore, supra,* 383 F.2d at 833 & n. 15. However, that enactment does not apply to the present case.

**7.** See note 5, *supra.*