FRAZEE MCCALL JOINT VENTURE, JNO. MCCALL COAL CO., INC., TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Frazee McCall Joint Venture v. Commissioner
Docket No. 11297-88
United States Tax Court
T.C. Memo 1990-639; 1990 Tax Ct. Memo LEXIS 714; 60 T.C.M. (CCH) 1466; T.C.M. (RIA) 90639; December 19, 1990, Filed *714 Decision will be entered under Rule 155. *715 John S. McDaniel, Jr. and Robert K. Briskin, for the petitioner. Elizabeth S. Henn, for the respondent. COLVIN, Judge. COLVIN
*2104 MEMORANDUM FINDINGS OF FACT AND OPINION This is a proceeding pursuant to section 6226 for a readjustment of partnership items of Frazee-McCall Joint Venture (petitioner), for the taxable years ending December 31, 1983, 1984, and 1985. Petitioner was formed and controlled by a 50-percent partner, the Jno. McCall Coal Co., *2105 and two related 25-percent partners, Edward and Donald Frazee. The only issue for decision in this opinion is whether petitioner may deduct legal fees incurred to defend against damage claims arising from its mining operations. We hold that petitioner's legal fees are deductible in part and capitalizable in part. Another issue for decision, relating to respondent's reallocation under section 482, will be decided by separate opinion. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Background
Frazee McCall Joint Venture is a general partnership organized in 1981 under the laws of West Virginia by the Jno. McCall Coal Company, Inc., a Maryland corporation *716 (McCall), and two individuals, Edward G. Frazee and Donald F. Frazee (the Frazees). Petitioner's offices are located in Kingwood, West Virginia. Petitioner also maintains a laboratory and office facility at the Kleen Coal Company Preparation Plant located near Kingwood, West Virginia. The Frazees are brothers, doing business together as coal producers. McCall is a coal distributor and wholesaler. When petitioner was organized, McCall and the Frazees entered into a written Agreement of Joint Venture dated March 13, 1981 (the Partnership Agreement). Respondent issued a Notice of Final Partnership Administrative Adjustment (FPAA) on February 22, 1988, determining adjustments to petitioner's returns for taxable years 1983, 1984, and 1985. Respondent disallowed deductions for petitioner's legal and accounting fees in the amounts of $ 122,111 and $ 34,201 for years 1983 and 1984, respectively. 2. Preston County Coal & Coke Company Litigation -- Introduction
Petitioner incurred legal expenses as a defendant in lawsuits brought by Preston County Coal and Coke Company (PCCC). PCCC sued petitioner for royalties for coal petitioner allegedly removed from certain lands owned *717 by PCCC. Petitioner asserted various affirmative defenses and counterclaims, and claimed it was entitled to remove the coal under an oral lease with PCCC. 3. Federal Court Litigation Between PCCC and Petitioner
On August 30, 1982, PCCC brought suit in the United States District Court for the District of Maryland against John M. McCall and Donald F. Frazee, both as individuals and as Frazee McCall Coal Co. In its suit PCCC sought: (1) royalties of $ 39,979 for coal allegedly mined pursuant to a coal mining lease, (2) a judgment of $ 1,500,949 for other coal allegedly mined from lands not covered by the lease, and (3) treble damages of $ 4,622,784 for the alleged unpaid amounts. Mr. McCall moved to dismiss the action against him. PCCC filed an amended complaint on November 2, 1982, substituting McCall Coal Co., a corporation at times doing business as Frazee McCall Coal Co., for Mr. McCall. The defendants moved to dismiss the complaint for lack of jurisdiction. The motion was granted on March 2, 1983. 4. State Court Litigation Between PCCC and Petitioner
On December 8, 1982, PCCC filed a suit in the Circuit Court of Preston County, West Virginia against McCall *718 Coal Co., and Donald F. Frazee, both separately and doing business at times as Frazee McCall Coal Co. The State court claims were the same as the amended Federal complaint. On May 13, 1983, PCCC filed an amended complaint in State court against McCall Coal Co., the Frazees, Weter Company, Inc., and Inter-State Lumber Company, Inc. (an intervening assignee between Weter Company and Frazee McCall). a. The Complaint
The amended complaint contained four counts: (1) PCCC alleged that petitioner failed to pay royalties on 186 tons of coal removed from the leasehold in violation of a March 1, 1979, lease (hereafter the original lease), and thus owed $ 232.50 to PCCC. (2) PCCC claimed that petitioners removed coal from the leasehold after March 15, 1982, without paying the required royalties. PCCC demanded judgment against petitioner for royalties thereon. (3) PCCC alleged that petitioner trespassed on and removed coal from an adjacent parcel of land owned by PCCC, known as the Jonathan Moore tract. PCCC demanded judgment against petitioner in the amount of $ 1,430,395. (4) PCCC claimed that petitioner's trespass entitled PCCC to treble damages of $ 4,291,882.50. The defendants *719 in the original state court complaint filed an answer, affirmative defenses, and counterclaims. b. The Answer
The answer denied most of the substantive allegations of the complaint. However, it admitted that PCCC was the original lessor under the *2106 original lease, that coal had been removed from the Jonathan Moore tract, and that mining operations were continuing. The answer also alleged that the original lease had been orally modified to include a portion of the Jonathan Moore tract. c. Affirmative Defenses
The defendants alleged ten affirmative defenses: (1) failure to state a cause of action, (2) accord and satisfaction, (3) equitable estoppel, (4) promissory estoppel, (5) waiver, (6) ratification, (7) laches and limitations, (8) unclean hands, (9) that the defendants had properly accounted for all coal mined and removed from the leasehold, and (10) that the original lease had been verbally modified to add certain of PCCC's mineral rights in the Jonathan Moore tract to the lease property; that this modification was reflected in a Permit Modification Map dated November 17, 1979, and approved May 15, 1980; that acting pursuant to the modification agreement the defendants *720 had redesigned the drainage system, obtained necessary permits, performed the necessary site preparation, undertaken the mining, and paid PCCC royalties; that PCCC had actual knowledge of and consented to the mining; that PCCC representatives had visited the mining area, observed the mining taking place, and expressed no objection thereto; and that the defendants had properly accounted to PCCC under the original lease for all coal mined and removed from the Jonathan Moore tract, and had tendered royalties to PCCC which were accepted. d. Counterclaims
Petitioner and Inter-State asserted six counterclaims. The counterclaims alleged that after the original lease was signed, the parties agreed for PCCC to lease to Inter-State (later to petitioner) the right to mine certain tracts of land (the second lease). The defendants charged that they incurred expenses of approximately $ 271,000 in preparation for mining, which resulted in material and valuable improvements to PCCC's property. Three counterclaims sought enforcement of the alleged lease. Other counterclaims sought compensatory and punitive damages. The specific counterclaims were: (1) Defendants alleged that PCCC breached *721 the agreement by disclaiming its existence, and refusing to execute the second lease. Defendants claimed that they had sustained substantial damages, and sought specific performance by PCCC (i.e., execution of the second lease) and compensatory damages. (2) Defendants alleged that PCCC's conduct constituted an implied consent to the agreement regarding the second lease, and sought specific performance of the agreement by PCCC. (3) Defendants alleged that PCCC should be promissorily estopped from denying the existence of the second lease, and requested the same relief as was requested in counts 1 and 2. (4) Defendants alleged that PCCC was unjustly enriched by the expenditures made by defendants in preparation for mining, and sought compensatory damages. (5) Defendants alleged that PCCC's representations that it would execute the second lease were fraudulent, and requested compensatory and punitive or exemplary damages. (6) Defendants alleged civil conspiracy based on representations made by PCCC, and sought compensatory and punitive or exemplary damages. On June 8, 1983, the defendants filed an amended counterclaim, adding Greer Steel Company, Richard G. Raese, and John *722 R. Raese as defendants to counts 5 and 6, and asserted an additional claim against these defendants for compensatory and punitive damages for tortious interference with contractual relations between PCCC and petitioner. e. Subsequent Motions
On June 21, 1983, PCCC filed a motion to strike defendants' answer, a motion to dismiss counterclaim, and an answer to counterclaim. On July 6, 1983, the counterdefendants Greer Steel Company, Richard G. Raese, and John R. Raese filed a motion to dismiss the counterclaim against them. On August 25, 1983, the various motions to strike the answer to the complaint and to dismiss the counterclaims were denied. On September 6, 1983, PCCC and the other counterdefendants filed amended answers, in the nature of more definitive statements, to the amended counterclaim. f. The Settlement
On June 1, 1984, the parties to the State court suit executed a settlement agreement and mutual release. Under the settlement agreement, each party released with prejudice its claims for damages. PCCC and petitioner entered into an agreement and lease, pursuant to which (1) PCCC leased to petitioner the lands covered by the original and second leases; *723 (2) PCCC acknowledged that petitioner had a lease covering coal owned by PCCC under surface mining permits that petitioner had secured; and (3) PCCC granted to petitioner a right of first refusal to purchase or lease certain tracts of coal and coal mining rights. 5. Petitioner's Legal Expenses
Petitioner incurred and deducted legal expenses in connection with the PCCC litigation totaling $ 122,111 in 1983 and $ 34,201 in 1984. OPINION *2107 The only issue for decision in this opinion is whether petitioner's legal expenses in connection with the PCCC suit are deductible. Petitioner argues that these litigation expenses were deductible business expenses because they were incurred to defend against damage claims arising from its mining operations. That is, PCCC's complaint sought monetary damages for petitioner's alleged failure to pay royalties for coal mined under the original lease, and petitioner's alleged trespass and conversion of coal from the Jonathan Moore tract. Petitioner argues that the PCCC litigation was not part of the process of acquiring the second lease. Rather, petitioner suggests that PCCC executed the second lease in settlement of the litigation to secure *724 a release of petitioner's substantial damages claims. Respondent maintains that the origin of the claim asserted in the PCCC litigation was in the nature of defending or perfecting title to a leasehold interest and thus was capital in nature. Notwithstanding the fact that PCCC and petitioner sought damages as part of the litigation, respondent argues that the central issue of the controversy was PCCC's claim that the Jonathan Moore tract was not subject to a lease. Respondent submits that petitioner's attempt to establish an oral modification to the original lease and the existence of the second lease was merely an attempt to defend its title to the leasehold property. Section 263 provides that no deduction is allowed for capital expenditures. Legal expenses incurred to defend or protect title to property or to acquire or dispose of a capital asset are capital expenditures and are not deductible. Woodward v. Commissioner, 397 U.S. 572, 575-576 (1970); Mosby v. Commissioner, 86 T.C. 190, 196 (1986); Boagni v. Commissioner, 59 T.C. 708, 713 (1973); *725 Kasey v. Commissioner, 54 T.C. 1642, 1648-1649 (1970), affd. 457 F.2d 369 (9th Cir. 1972); Midco Oil Corp. v. Commissioner , 20 T.C. 587, 591 (1953). This applies where the property consists of leasehold interests. Industrial Aggregate Company v. United States, 284 F.2d 639 (8th Cir. 1960); Bush Terminal Bldgs. Co. v. Commissioner, 204 F.2d 575, 578 (2d Cir. 1953); Republic Petroleum Corporation v. United States, 397 F. Supp. 900, 914 (E.D. La. 1975), affd. and revd. on other issues 613 F.2d 518 (5th Cir. 1980). Litigation to recover royalties does not involve defending or perfecting title. Southland Royalty Co. v. United States, 217 Ct. Cl. 431, 582 F.2d 604, 611-612 (1978); Boagni v. Commissioner, supra at 714; Estate of Arnett v. Commissioner, 31 T.C. 320, 335 (1958). Similarly, litigation to collect income due under an assignment of oil and gas leases, where the only questions are whether any payments are due *726 and the manner in which the royalty computations should be made, is not an action to defend or perfect title. Pierce Estates, Inc. v. Commissioner, 3 T.C. 875, 892 (1944). The appropriate test for determining whether petitioner may deduct legal expenses is the origin of the claim, rather than the dominant purpose in defending and settling the suit. Woodward v. Commissioner, supra at 577-578; Anchor Coupling Co. v. United States, 427 F.2d 429, 431-433 (7th Cir. 1970), cert. denied 401 U.S. 908 (1971); Mosby v. Commissioner, supra at 196-197; Boagni v. Commissioner, supra at 713. In Woodward v. Commissioner, supra at 577, the Supreme Court rejected the "primary purpose" test, explaining that "A test based on the taxpayer's 'purpose' in undertaking or defending * * * litigation would encourage resort to formalisms and artificial distinctions." The test for determining deductibility of legal fees under section 162 is ordinarily an objective one, looking *727 to the "origin" or "character" of the claim rather than to the subjective "purpose" of the taxpayer in pursuing it. Woodward v. Commissioner, supra at 577-578; United States v. Gilmore, 372 U.S. 39, 49 (1963). The origin of the claim is found by analyzing the facts, United States v. Gilmore, supra at 47-48; Boagni v. Commissioner, supra; Southland Royalty Co. v. United States, 217 Ct. Cl. 431, 582 F.2d 604, 609 (1978); Manufacturers Hanover Trust Co. v. United States, 160 Ct. Cl. 582, 312 F.2d 785, 788 (1963), and determining the basis of the transaction, and does not rely on purpose, consequence, or result. Newark Morning Ledger Co. v. United States, 416 F. Supp. 689, 695 (D. N.J. 1975), affd. 539 F.2d 929 (3d Cir. 1976). Thus, we must consider "the issues involved, the nature and objectives of the litigation, the defenses asserted, the purpose for which the claimed deductions were expended, the background of the litigation, and all facts pertaining to the controversy." Boagni v. Commissioner, supra at 713. *728 If the origin of a claim is in part to defend or perfect title, and in part to recover royalties, an allocation is made between those expenses which are capital expenditures and those which are deductible business expenses. Boagni v. Commissioner, supra at 713-714; Spangler v. Commissioner, 323 F.2d 913, 919-920 (9th Cir. 1963), affg. a Memorandum Opinion of this Court; Estate of Arnett v. Commissioner, supra; Kelly v. Commissioner, *2108 23 T.C. 682, 688-689 (1955), affd. 228 F.2d 512 (7th Cir. 1956); sec. 1.212-1(k), Income Tax Regs. Here, the origin of petitioner's claim was in part to resolve the amount of royalty payments owing and in part to resolve the existence of an amended lease. Petitioner incurred substantial legal expenses both in defending its right to mine coal from PCCC's property, and defending against PCCC's claim for royalties. There is no bright line for distinguishing where petitioner's defense in the dispute over title to the leasehold property ended and where petitioner's defense in the action to recover accrued but unpaid royalties began. *729 We conclude that petitioner's legal expenses should be apportioned between those which were incurred to defend or perfect petitioner's title to leasehold interests, and those which were incurred in defending PCCC's claim for royalties. Such an allocation between deductible and nondeductible expenses is not unusual, see Larchfield Corp. v. United States, 373 F.2d 159, 167-168 (2d Cir. 1966), although "a rough approximation is all that can be expected." Ditmars v. Commissioner, 302 F.2d 481, 488 (2d Cir. 1962); Burch v. United States, 698 F.2d 575, 579-580 (2d Cir. 1983). Accordingly, we hold that petitioner may deduct 50 percent of its litigation costs in defending against the PCCC suit, but must capitalize the remaining 50 percent of those costs. Decision will not be entered until disposition of the issue relating to respondent's reallocation under section 482. At that time, Decision will be entered under Rule 155.