T.C. Memo. 1996-186


UNITED STATES TAX COURT


PETERS, GAMM, WEST & VINCENT, INC., RICHARD L. WEST,
JUDITH L. WEST, MARC A. VINCENT, DEBORAH S. VINCENT,
GARY L. GAMM AND CONNIE F. GAMM, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DON S. AND CONSTANCE J. PETERS, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 2722-93, 3735-94.        Filed April 17, 1996.


Thomas C. Triplett, for petitioners in docket No. 2722-93.

Jack D. Flesher, for petitioners in docket No. 3735-94.

Frank M. Schuler and Michael L. Boman, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

KÖRNER, Judge:  Respondent determined deficiencies,
additions, and penalties with respect to petitioners' Federal
income taxes for the years and in the amounts as follows:

Docket No. 2722-93

| Petitioner | Year | Deficiency |
|------------|------|------------|
| Richard L. and | 1988 | $3,719 |
| Judith L. West | 1989 | 5,588 |
| | | |
| Marc A. and | 1988 | 1,961 |
| Deborah S. Vincent | 1989 | 5,869 |
| | 1990 | 7,334 |
| | | |
| Gary L. and | 1988 | 14,849 |
| Connie F. Gamm | 1989 | 21,570 |
| | 1990 | 12,857 |

Don S. and Constance J. Peters--Docket No. 3735-94

| | | Additions to Tax | | Penalty |
|------|------------|-----------------|-----------------|-----------|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6662 |
| 1988 | $66,824 | $17,015 | $8,092 | -- |
| 1989 | 110,501 | 14,271 | -- | $5,600 |
| 1990 | 98,634 | 1,215 | -- | 5,750 |

The above cases were consolidated for trial, briefing, and opinion. All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.

Petitioners Richard L. and Judith L. West filed joint income tax returns for 1988 and 1989. Petitioners Marc A. and Deborah S. Vincent filed joint income tax returns for 1988 through 1990. Petitioners Gary L. and Connie F. Gamm filed joint income tax returns for taxable years 1988 through 1990. The Gamms, the Vincents, and the Wests resided in Wichita, Kansas, at the time their respective petitions were filed. Petitioners Don S. and Constance J. Peters filed joint income tax returns for 1988

through 1990, and lived in Towanda, Kansas, at the time their petition was filed. Peters, Gamm & West, Inc.,[1] was an S corporation formed under the laws of the State of Kansas in 1986.

After concessions[2] and settlement of various issues, we must decide:

(1) Whether Peters, Gamm, West & Vincent, Inc. (PGWV), is entitled to a deduction for legal fees incurred in defending an action brought by the Securities and Exchange Commission (SEC) against one of the principals of PGWV. We hold that it is not.

(2) Whether the legal fees are deductible by PGWV as compensation to petitioner Don S. Peters. We hold that they are not.

(3) Whether petitioner Don S. Peters, individually, is entitled to a deduction under section 212(1) in an amount equal to the previously disallowed amounts paid by PGWV in defending the legal action brought by the SEC. We hold that he is.

## FINDINGS OF FACT

In August 1983, Gamm, Ivan West (Ivan), and Peters formed an equal partnership called Investment Management Group (IMG). The

---

[1] In 1989, Marc A. Vincent became a principal of the firm, and, accordingly, in 1990 the name was amended to Peters, Gamm, West & Vincent, Inc. (PGWV). Hereinafter, references to PGWV will be to Peters, Gamm & West, Inc., or Peters, Gamm, West & Vincent, Inc., depending on the year involved.

[2] Petitioners Peters conceded the sec. 6651(a)(1) addition to tax for tax years 1988, 1989, and 1990 and the sec. 6662(a) penalty for the 1990 tax year. Respondent conceded the sec. 6653(a)(1) addition to tax for the 1988 tax year and the sec. 6662(a) penalty for the 1989 tax year.

business purpose of IMG was to act as an investment adviser, provide advice with respect to the buying and selling of securities, and manage money for clients on a discretionary basis. The partnership filed a Form ADV, dated August 12, 1983, with the SEC to register as an investment adviser.

Certain prior activities of the partners were excluded from IMG's business pursuant to the partnership agreement. One of the excluded activities of Ivan was a consulting agreement with Energy Reserves Group (ERG), a publicly held company located in Wichita, Kansas. Pursuant to the consulting agreement, Ivan, along with Wayne Swearingen, was to obtain debt or equity financing for ERG. On November 8, 1984, a public tender offer was made for all outstanding stock of ERG. Prior to the tender offer, several individuals purchased substantial quantities of ERG stock which they sold for a significant profit after announcement of the tender offer. On November 19, 1984, Bernard Lounsbury (Lounsbury) tendered checks in the amount of $7,500 each to Peters and Gamm. On November 20, 1985, Mr. Peters deposited a check into his personal checking account from Kenneth Mick (Mick) in the amount of $43,000. Lounsbury and Mick were business associates of Mr. Peters, but were not clients of IMG. At the time of these payments, the payors were indebted to Peters in amounts greater than the payments. Mr. Peters reported the $7,500 as income on his Schedule C for 1984.

In October 1986, the IMG partners received subpoenas from the SEC that sought documents and testimony concerning the transactions involving ERG stock made around the time of the tender offer. The partners met with attorneys from various law firms located in Wichita, Kansas, and Washington, D.C., to determine how best to respond to the subpoenas, to determine what the implications were as to the firm or the individual partners, and to ascertain what steps needed to be taken. Initially none of the partners knew that the investigation was specifically targeting the conduct of Peters.

On December 23, 1986, an agreement was executed whereby Ivan withdrew from the partnership. Pursuant to such agreement, Ivan received the value of his capital contribution, as well as a commitment for one-sixth of the annual net income of the partnership or any successor to the partnership.

On December 11, 1986,[3] IMG was dissolved and replaced by Peters, Gamm & West, Inc. The corporation began conducting business in January 1987. The corporation assumed all of the partnership's assets, retained its clients, kept the same employees and place of business, and assumed all partnership obligations and liabilities. The business of IMG was

---

[3] PGWV's 1988 income tax return shows that the date of election as an S corporation was Dec. 11, 1986. This conflicts with the withdrawal agreement executed by the Investment Management Group on Dec. 23, 1986. The validity of the S election is not in issue, nor is the validity of the partnership withdrawal agreement.

uninterrupted, and the clients of IMG were told that there had been a name change.  Payments were made to Ivan pursuant to the deferred compensation agreement previously executed by IMG. Sometime after Ivan's departure, his son, Richard West (Richard), who had been employed by IMG and PGWV, became a shareholder of PGWV.  On January 7, 1987, the corporation adopted a resolution that stated:

> RESOLVED, that the Corporation continue to pay legal expenses for attorneys engaged by Mr. Don Peters in connection with the investigation by the Securities Exchange Commission with respect to sales of stock of ERG.  The payment of such expenses is subject to the understanding and acknowledgment by Mr. Peters that payment of such expenses is not to be construed by [sic] any indication that the Corporation has any responsibility with respect to the particular matters being investigated or obligated as to any liability, damages, penalties or fines that may result from said investigation.  It is to be understood that the Corporation may at any time discontinue the payment of such legal expenses and thereupon will have no obligation with respect to such expenses.

Based on this resolution, we conclude that at the time of incorporation, the PGWV shareholders knew that the investigation was focused on the activities of Peters.  Peters owned 42.5 percent, 40 percent, and 35 percent of PGWV during the years 1988 through 1990, respectively.

On January 9, 1987, the corporation filed an amendment to the ADV form with the SEC, which indicated that its name had changed from IMG to PGWV.  At the end of 1990, the name was amended to Peters, Gamm, West & Vincent, Inc., to reflect the addition of a shareholder, Mark A. Vincent, in January 1989.

The principals were informed by counsel that if the SEC were successful against Peters it would rescind his license, and it would probably turn its attention towards the company and attempt to revoke its license.

The principals of PGWV were involved in all aspects of the representation by counsel and in forming a strategy as to how to proceed; they did not want Peters to make any decisions without them, especially regarding any settlements with the SEC. Their efforts were aimed at avoiding litigation. In December 1988, the SEC filed a complaint against Peters and five other individuals, alleging acts in violation of the Securities Exchange Act of 1934, and rules promulgated thereunder. PGWV was not named as a party to the suit. Specifically, the SEC alleged in its complaint that Peters improperly obtained material nonpublic information from Ivan's files, which he communicated to Mick and Lounsbury who were able to profit by buying the stock of ERG themselves or by supplying the information to others who did so. Pursuant to such scheme, Peters allegedly received a portion of those profits in the form of repayment of loans previously made by him to Mick and Lounsbury. At the time of repayment, Mick had financial problems.

The case was heard before a jury, which held for Peters. The SEC appealed to the Tenth Circuit Court of Appeals, which reversed and remanded to the trial court. SEC v. Peters, 978 F.2d 1162 (10th Cir. 1992). Prior to rehearing, the parties

reached a settlement.  Pursuant to the settlement, Peters was to pay $50,500, representing the profits of the alleged inside trading.  Such payment was waived in light of Peters' poor financial condition.  The allegations of the SEC were never proven by the SEC, and Peters did not admit to any wrongdoing.

When the complaint was filed, PGWV was told by counsel to amend its ADV filing with the SEC.  Such amendment, made on January 3, 1989, disclosed the existence and nature of the suit.  PGWV also disclosed the suit on its audited balance sheets, indicating that "the company is committed to retaining the services of this officer and, accordingly, indemnified him for any legal fees incurred in connection with this complaint".  PGWV hired Sullivan & Higdon, a public relations firm, to assist in damage control.  Deductions were claimed for such payment, but they are not in issue.

As a result of the SEC's complaint, Merrill Lynch (a brokerage firm) deleted PGWV from its list of investment managers available to clients of one of its consulting services.  The notice from Merrill Lynch acknowledged that PGWV was not implicated, but indicated that the removal of the latter from the list was "prudent".  Licensing bureaus for the States of Maine and Kentucky suggested that PGWV withdraw its application for investment adviser registration until the matter with the SEC was resolved.  One of the largest clients of PGWV, the Kansas Public Employees Retirement System (KPERS), representing about 60

percent of the firm's business, was valued at around $100 million and later grew to almost $500 million.  Trustees of the KPERS fund informed IMG at a public meeting that the fund would no longer utilize the services of PGWV if Peters were found to have committed any of the alleged insider trading or any other wrongdoing.

PGWV claimed as a deduction legal fees in the amounts of $128,854.71, $198,431.67, and $135,659.23 in computing its net income on its subchapter S return for the tax years 1988 through 1990, respectively.  Respondent disallowed $123,103, $190,245, and $128,131 of those amounts in her timely notices of deficiency, stating that it had not been established that those amounts were for ordinary and necessary business expenses, rather than nondeductible business expenses of Peters.  The pro rata share of such deductions claimed by petitioners on their income tax returns was disallowed.  Respondent has conceded that the amounts claimed as legal fees were paid by PGWV.

OPINION

The primary issue is whether PGWV, in computing net income for subchapter S purposes, may deduct legal fees incurred in defending an action brought by the SEC against petitioner Peters, one of the shareholders of PGWV.  Section 162(a) allows a taxpayer to deduct ordinary and necessary expenses paid or incurred in carrying on a trade or business.  If we determine that the amounts in question are not deductible as legal fees, we

must determine whether they are deductible as compensation to Peters. If the fees are not deductible by PGWV, we must determine whether Peters, individually, is entitled to a deduction under section 212(1). Petitioners have the burden of proof. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111 (1933).

1. <u>Deductibility of Legal Fees by PGWV Under Section 162(a)</u>

Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". For an expense to be deductible under section 162(a), it must meet five basic elements: (a) It must be ordinary; (b) it must be necessary; (c) it must be paid or incurred by the taxpayer in the taxable year; (d) there must be a trade or business; and (e) the expense must arise in connection with or proximately result from that trade or business. <u>O'Malley v. Commissioner</u>, 91 T.C. 352, 361 (1988).

These elements are in the conjunctive: if just one is not satisfied, the deduction is not allowed. Because we make our decision based on the last element, whether the expenses arose in the carrying on of PGWV's trade or business, we do not consider the other elements. Respondent has conceded that legal fees of $128,854.71, $198,431.67, and $135,659.23 were incurred for the tax years 1988 through 1990, respectively, and that PGWV paid them.

Respondent argues that the legal fees are personal in nature, and they did not arise in connection with or proximately

from PGWV's business.  Petitioners take the position that PGWV, the successor to IMG, incurred the legal fees to protect its trade or business as well as its reputation, and that because payment of the fees was helpful to PGWV's trade or business, they are deductible.

Expenses which are personal in nature are not generally deductible.  Sec. 262; Johnson v. Commissioner, 72 T.C. 340, 348 (1979).  An expense must be directly connected with, or proximately result from, the business of the taxpayer. Kornhauser v. United States 276 U.S. 145, 153 (1928); see also Deputy v. du Pont, 308 U.S. 488, 494 (1940).  Where expenses of litigation are involved, the origin of the claim which gave rise to the litigation, rather than the consequences of the litigation, is evaluated to ascertain whether the expenses are business or personal in nature.  United States v. Gilmore, 372 U.S. 39 (1963).  The expenses of an activity are not automatically rendered nondeductible merely because the activity is illegal or inappropriate.  See Johnson v. Commissioner, supra (legal expenses incurred in unsuccessful defense against criminal charges brought against taxpayer's husband due to his participation in a tax fraud scheme treated as deductible under section 212(1) because the criminal prosecution arose from his profit-seeking activities).  Additionally, otherwise allowable deductions under section 162 or 212, which arose from an illegal activity, will not be disallowed on public policy grounds.

Commissioner v. Tellier, 383 U.S. 687 (1966). In Boagni v. Commissioner, 59 T.C. 708, 713 (1973), we stated:

> Quite plainly, the "origin of the claim" rule does not contemplate a mechanical search for the first in the chain of events which led to the litigation but, rather, requires an examination of all the facts. The inquiry is directed to the ascertainment of the "kind of transaction" out of which the litigation arose. Consideration must be given to the issues involved, the nature and objectives of the litigation, the defenses asserted, the purpose for which the claimed deductions were expended, the background of the litigation, and all the facts pertaining to the controversy. [Citations and fn. ref. omitted.]

We must identify the claim that gave rise to the legal fees whose deductibility is here in question, and then determine whether the claim was proximately related to the trade or business of PGWV.

In Commissioner v. Heininger, 320 U.S. 467 (1943), a dentist who sold mail order false teeth was allowed to deduct legal fees stemming from allegations that he made fraudulent claims regarding the quality of his product. Finding that there was "no doubt that the legal expenses of [taxpayer] were directly connected with 'carrying on' his business," id. at 470, the Court determined that the expenditures were ordinary and necessary under section 23(a) of the Revenue Act of 1936, ch. 690, 49 Stat. 1658.[4] Commissioner v. Heininger, supra at 471.

In United States v. Gilmore, supra, by contrast, the taxpayer incurred legal fees in a divorce proceeding brought by

---

[4] This section is essentially the same as present sec. 162(a).

his wife, who stood to gain control of his three incorporated auto dealerships. The taxpayer argued that because he faced losing control of his corporations, the legal expenses were incurred in the defense or preservation of income-producing property. The Court declined to attach controlling importance to the consequences that the taxpayer faced, but rather examined whether the claim arose in connection with the taxpayer's profit-seeking activity. The Court did not allow the deductions because the wife's claims stemmed from the marital relationship, and not from any income-producing activity of the taxpayer. United States v. Gilmore, supra at 51; see Kornhauser v. United States, supra at 153.

Respondent argues that the origin of the SEC's claim did not arise from PGWV's trade or business, and that under United States v. Gilmore, supra, the consequences to PGWV are irrelevant to the analysis. Respondent also argues that the origin of the claim was not in PGWV's trade or business because IMG's partnership agreement specifically excluded the ERG deal, and that Peters' activities were not a business activity of IMG or PGWV. Petitioners argue that the alleged claim had its origin in the trade or business of the firm, which was in the business of acting as an investment adviser, and therefore deduction of the legal expenses incurred in defending such action is not barred by United States v. Gilmore, supra.

The actual tender offer, which was excluded from the partnership agreement, was not the origin of the claim. Rather, the origin of the claim was the alleged misappropriation of inside information, followed by improper trading.

Peters received $7,500 from Lounsbury and $43,000 from Mick on November 19 and 20, 1985, respectively. The SEC alleged in its suit brought against Peters that although these payments were debt repayment, they were only made as a result of Peters' having illicitly obtained inside information concerning the pending tender offer for stock of ERG, which he then relayed to Mick and Lounsbury, who profited therefrom by trading in ERG stock. The underlying transaction, or set of facts that gave rise to the claim, is not the actual debt repayment, but rather the facts giving rise to the claim are that the debt repayment was in actuality the profits of insider trading. The claim is the SEC's allegations. PGWV was not named as a defendant in the SEC's suit. If the gain had been realized by or for the benefit of PGWV, then the activity, although illicit, would have been within the company's trade or business. For instance, if a bank executive is charged with embezzlement, that conduct would be within his own profit-seeking activities, not that of the bank, but if the bank executive were found guilty of causing improper foreclosures, and such foreclosures benefited the bank, that activity, although improper, would be in the trade or business of the bank.

Petitioners have introduced evidence that there would have been injurious consequences to the business reputation of PGWV if the SEC prevailed. Although we are instructed by <u>Boagni v. Commissioner</u>, <u>supra</u>, to consider all the facts and circumstances, we are bound by the rule established by <u>United States v. Gilmore</u>, <u>supra</u>, to look to the origin of the underlying claim, and not the consequences. The origin of the claim herein was not in the trade or business of PGWV, but rather in Peters' separate activities. The legal expenses were incurred defending a claim which had its origin in a transaction that was not part of PGWV's business and which benefited Peters personally. We find that the claim did not arise in the trade or business of PGWV, and therefore the amounts in question are not deductible as legal fees by PGWV under section 162(a). To this extent, respondent's determination is sustained.

2. <u>Deductibility of the Fees by PGWV as Compensation to Peters</u>

Having concluded that the amounts in question are not deductible by PGWV as legal fees, we now consider petitioners' contention that payment of such fees is deductible by PGWV as compensation to Peters.[5] Section 162(a)(1) allows a deduction for reasonable salaries or compensation for personal services actually rendered. Such payments are deductible only if they were made with the intention to compensate. <u>Paula Constr. Co. v.</u>

---

[5] This issue was raised by petitioners other than Mr. Peters in this case.

Commissioner, 58 T.C. 1055, 1058 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973).  Petitioners have failed to introduce any evidence that the payment of legal fees was intended by PGWV to serve as compensation or salary to Mr. Peters.  Accordingly, PGWV is not allowed to deduct the payment of the legal fees as compensation to Peters.

3.  Whether a Portion of the Firm's Expense Was an Allowable Deduction to Peters

Last, we must decide whether the expenses incurred were deductible by Peters.[6]  Under section 212(1), individuals may deduct all the ordinary and necessary expenses paid or incurred during the tax year for the production or collection of income. Our analysis is similar to that used for section 162(a), the difference being that the profit-seeking or income-producing activity need not amount to a trade or business.  Johnson v. Commissioner, 72 T.C. 340, 347 (1979).  Accordingly, the expense must meet four basic elements:  (a) Payment of the legal fees must be ordinary; (b) it must be necessary; (c) they must be paid or incurred during the tax year by the taxpayer; and (d) the expense must arise in connection with, or proximately result from the taxpayer's profit-seeking activity.  O'Malley v. Commissioner, 91 T.C. 352, 361 (1988).

---

[6]  This issue was raised in this case by petitioners Peters.

A.  Ordinary

Ordinary expenses have been described as "normal, usual, or customary".  Deputy v. du Pont, 308 U.S. at 495.  Ordinary has been used to distinguish currently deductible expenses from capital expenses, such as startup costs or acquisition costs, or costs in defending title.  Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345 (1971); Woodward v. Commissioner, 397 U.S. 572 (1970); Carl Reimers Co. v. Commissioner, 211 F.2d 66 (2d Cir. 1954), affg. 19 T.C. 1235 (1953).  An expense may be deductible as one incurred in the ordinary course of business, even if it is unlikely to recur.  Welch v. Helvering, 289 U.S. 111, 114 (1933).  The Supreme Court in Commissioner v. Heininger, 320 U.S. 467, 471 (1943), allowed a deduction for legal fees where obtaining legal representation was the normal response of one whose business was threatened by a law suit.  See also Kanelos v. Commissioner, a Memorandum Opinion of this Court dated Sept. 21, 1943.

Respondent argues that the origin of the claim giving rise to the legal expenses here in issue was capital in nature because the claim involved the sale of a capital asset (namely, the ERG stock), and because Peters undertook to defend against the claim in order to prevent disgorgement of proceeds of insider trading. Respondent contends that under Barrett v. Commissioner, 96 T.C. 713 (1991), such legal fees are not currently deductible.

18

Respondent's argument fails for the following reasons. Although the underlying transaction here did remotely involve a capital transaction (the purchase of the ERG stock), the relation of Peters to such transaction is too attenuated. Peters allegedly gave inside information to Mick and Lounsbury, who then profited from such information, and returned some of the profits by the repayment of loans. Peters did not buy any stock; furthermore, the allegations of the SEC were never proven or admitted by Peters.

In Barrett v. Commissioner, supra, the taxpayer was sued by the SEC, inter alia, for alleged inside trading; as part of a settlement, he disgorged his profits. The case is distinguishable because there the taxpayer was a buyer-broker, and the underlying transaction was the purchase of certain options by the taxpayer based on inside information. In our case, Peters was not a buyer-broker, but was an investment adviser; he did not personally buy the stock which gave rise to the claim.

In the present case, Peters was alleged to have committed an inside trade, and faced losing his license as an investment adviser. There being nothing capital concerning the legal fees (they were spent to protect Peters and his money-making activity), we find that defending the SEC allegations was proximately related to his business, and accordingly we hold that the payment of the legal fees was ordinary in nature for him.

B.  Necessary

A necessary expense is one that is appropriate or helpful to the taxpayer in his profit-seeking activities. Commissioner v. Heininger, supra at 471. Peters was an investment adviser. The aim of the litigation with the SEC was to revoke his license in such endeavors. We find that the legal expenses were necessary to protect his profit-seeking activities.

C.  Paid or Incurred During the Tax Year

Respondent conceded that legal fees of $128,854.71, $198,431.67, and $135,659.23 were incurred for the tax years 1988 through 1990, respectively, and that PGWV paid them. Respondent disallowed deductions of $123,103, $190,245, and $128,131 for the years 1988 through 1990. We have held that the payment of the legal fees was not deductible as an expense by PGWV under section 162(a).

Petitioner argues that the legal fees were constructively paid by him, and refers to Broad v. Commissioner, T.C. Memo. 1990-317, for support. In Broad, a C corporation made payments on a loan that was a personal obligation of one of the shareholders. This Court held that the payment of the loan obligation was a constructive dividend; we then allowed the taxpayer a deduction for the interest on the loan. In other words, we reasoned that because he was treated as having received an amount equal to the loan payment by the bank for him, he should be treated as having paid the interest to the bank which

was part of that payment.  Broad v. Commissioner, supra, citing Hufnagle v. Commissioner, T.C. Memo. 1986-119.  We have repeatedly held that where a corporation pays the personal expenses of a shareholder, such payment will be treated as a constructive dividend to the shareholder to the extent of the corporation's earnings and profits, and to the extent that the corporation does not expect repayment.  Falsetti v. Commissioner, 85 T.C. 332 (1985); Henry Schwartz Corp. v. Commissioner, 60 T.C. 728 (1973); Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650 (1962); McWilliams v. Commissioner, T.C. Memo. 1995-454; Smith v. Commissioner, T.C. Memo. 1995-410.  Generally, the case law deals with deemed or constructive dividends.  Respondent has not determined nor argued that Peters received dividend income, and, accordingly, we analyze only whether there has been a constructive distribution.  Neither party has sought to characterize the payment of the legal fees as a dividend to Peters, nor are the facts necessary for such an analysis before us.  In our case, legal fees were paid by PGWV, there was no expectation of repayment, and the payment directly benefited Peters.  We therefore find that the payment of the legal fees constituted a distribution to Peters; we make no decision as to the characterization of the distribution, either as income to Peters, a loan to him, or a return of capital; it is not necessary to our conclusion that Peters received a constructive distribution of the funds which in turn were used to pay the

legal charges incurred for his benefit.  We hold that Peters was in constructive receipt of the distribution in the amount of the legal fees, and for purposes of claiming them as a deduction he has also constructively paid the legal fees.  Cf. Mueller v. Commissioner, 496 F.2d 899 (5th Cir. 1974), affg. in part, revg. in part and remanding 60 T.C. 36 (1973).

D.  Incurred in Connection with Taxpayer's Profit-Seeking Activity

The final element will be met where the activity proximately results from the taxpayer's profit-seeking activity.  Deputy v. du Pont, 308 U.S. 488, 492 (1940); Kornhauser v. United States, 276 U.S. 145 (1928).  We have held above that the origin of the claim was not in the trade or business of PGWV, but rather arose in Peters' own activities.  The question becomes whether the activity was a profit-seeking activity for purposes of section 212(1).  The transaction in question involved Peters' receipt of certain payments that the SEC alleged were made only as the result of an inside trade.  Those allegations were never proven. If they were true, and Peters did engage in an inside trade, such trade was a profit-seeking activity, albeit an improper one.  See Kent v. Commissioner, T.C. Memo. 1986-324 (charter boat captain arrested for marijuana smuggling allowed to deduct legal fees paid by an undisclosed third party).  If the allegations were not true, then the underlying transaction was the repayment of loans from colleagues who were not clients of PGWV.  The loans resulted from Peters' profit-making business relationship with such

colleagues, and we conclude that the payment of the legal fees cannot reasonably be construed as being personal, as opposed to business, in nature. <u>Kornhauser v. United States</u>, <u>supra</u> at 148.

The necessary elements having been met, we hold that Peters is entitled to a deduction under section 212(1) for the previously disallowed legal fees paid on his behalf by PGWV.

<u>Decisions will be entered</u>

<u>under Rule 155</u>.