**OKEMAH NATIONAL BANK, a corporation, Appellant,**

v.

**Earl R. WISEMAN, District Director Internal Revenue, Appellee.**

No. 5644.

United States Court of Appeals
Tenth Circuit.

March 10, 1958.

Rehearing Denied April 11, 1958.

Ram Morrison, Oklahoma City, Okl., for appellant.

C. M. Featherston, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Charles B. E. Freeman, Attorneys, Department of Justice, Washington, D. C., Paul W. Cress, U. S. Atty., and Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

BRATTON, Chief Judge.

Okemah National Bank, of Okemah, Oklahoma, instituted this action against the Director of Internal Revenue for the District of Oklahoma. The case was tried to a jury. At the conclusion of the evidence, the court withdrew the case from the jury and later entered judgment dismissing the action. The bank appealed.

These facts were established at the trial, some by stipulation and some by evidence. In 1925, A. J. Martin was president and a director of the bank; V. K. Chowning and Burr Randles were directors; the three of them owned a majority of the outstanding stock; and they controlled the bank. Hill Moore and Washington Grayson were trustees of the trust estates of two Indians. On or about April 15, 1925, Martin executed a surety bond covering the trustees; and

at the same time he also executed a separate written agreement with them in which he obtained joint control of the trust estates with power to disapprove any transaction of the trustees in connection with the administration of the trusts. The bond and control contract were in force from April, 1925, to December, 1929. Martin received regularly an annual premium of $700 for having signed the bond. Martin, Chowning, and Randles executed an agreement in writing which provided that in the event Martin should be required to make any payment for liability upon the bond, Chowning and Randles would reimburse him in proportion as they had shared in the distribution of the premium paid to Martin for having signed such bond. From year to year, Chowning and Randles each received $233.33 of such premium; Martin retained the remainder; and the three individuals reported such amounts in their income tax returns, respectively. The bank neither received nor reported any portion of such premiums as income. During the term of suretyship, the trusts maintained an average monthly balance on deposit in the bank of $43,635.11. Such deposits ranged in point of percentage from 2.75 to 3.88 of the total demand deposits in the bank. At the time Martin entered into the surety contract and the control contract, the surplus funds of the trust estates were kept in a bank at Muskogee, Oklahoma, and shortly after the suretyship ended the surplus funds were removed to a bank at Weleetka, Oklahoma. In 1940, the then guardian of the minor heirs of the Indian beneficiaries of the trusts instituted an action against the trustees, the bank, Martin, Chowning, Randles, and others, alleging a conspiracy to defraud and fraud in the handling of the trust funds. The bank, Chowning, and Randles were dismissed from the action. The action then proceeded against the trustees and Martin on the bond. In 1950, judgment in the sum of $14,000 and costs was entered against Martin; and in October of that year the bank paid the judgment and also paid $2,199.99 for attorneys' fees and court costs incurred in the defense of the action. In its income tax return for the year 1950, the bank claimed as a deduction from gross income the amount in the aggregate disbursed in payment of the judgment and for attorneys' fees. The Commissioner of Internal Revenue disallowed the deduction; a deficiency assessment followed; the assessment was paid under protest; and this suit was seasonably instituted to recover.

Through iteration and frequent reiteration, it has become elementary that deductions from gross income are not a matter of right and they do not turn upon equitable consideration. They are a matter exclusively of legislative grace. And a taxpayer claiming a deduction must bring himself squarely within the terms of a statute expressly authorizing it. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; White v. United States, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172; Deputy v. du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Hales-Mullaly, Inc., v. Commissioner, 10 Cir., 131 F.2d 509; F. A. Gillespie & Sons Co. v. Commissioner, 10 Cir., 154 F.2d 913, certiorari denied 329 U.S. 781, 67 S.Ct. 204, 91 L.Ed. 670; Chicago Mines Co. v. Commissioner, 10 Cir., 164 F.2d 785, certiorari denied 333 U.S. 881, 68 S.Ct. 913, 92 L.Ed. 1156; United States v. Akin, 10 Cir., 248 F.2d 742.

The bank relies upon section 23(a)(1)(A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a)(1)(A), to sustain the deduction in question. The statute authorizes a deduction from gross income for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. But it does not authorize as a deduction all expenses of every kind and character paid or incurred. It is expressly limited in reach to ordinary and necessary expenses paid or incurred in carrying on a trade or business. And in order to come within the statute an expense must be both ordinary and necessary in relation to the kind of trade or business in which

the taxpayer is engaged. Therefore, in order to come within the statute, the amount which the bank paid out in settlement of the judgment and for attorneys' fees must have been both ordinary and necessary in relation to the business of banking. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Deputy v. du Pont, supra; Hales-Mullaly, Inc. v. Commissioner, supra; United States v. Akin, supra.

██ The disbursement made by the bank was in payment of the judgment rendered against Martin and for attorneys' fees in the litigation culminating in such judgment. And it is well settled that payment of the debt or obligation of another is not an ordinary and necessary expense which may be deducted from gross income. Welch v. Commissioner, supra; Blackwell Oil & Gas Co. v. Commissioner, 10 Cir., 60 F.2d 257; A. Giurlani & Bro. v. Commissioner, 9 Cir., 119 F.2d 852. But the bank urges the contention that as between the contracting parties, it was an undisclosed principal on the bond. The substance of the argument is that the bank agreed to protect Martin against loss on the bond; that in doing so, it assumed the responsibility of a principal on the bond in order to obtain the benefit of the deposits of the surplus funds of the trusts; that the arrangement was one designed to promote the business of the bank; and that therefore the disbursements made by the bank in payment of the judgment against Martin and for attorneys' fees in defending Martin against liability were ordinary and necessary expenses incurred and paid in connection with the business of the bank. The bank was not an undisclosed principal on the bond. Martin was the principal. He was paid a commission or premium for assuming the responsibility. And Martin, Chowning, and Randles agreed in writing that in the event Martin was called upon to make payment of liability incurred under the bond, Chowning and Randles should reimburse him in the proportion in which the three had shared in the distribution of the premium paid to Martin for having signed the bond.

██ The bank advances the further contention that it effectively agreed and obligated itself to protect Martin against liability or loss upon the bond and that therefore the amount disbursed in the discharge of the judgment and for attorneys' fees was paid as necessary and ordinary expenses incurred in connection with the business of the bank. There was no written evidence of such an agreement or obligation, either in the minutes of the board of directors of the bank or otherwise. There was evidence tending to show that Martin, Chowning, and Randles agreed verbally in the course of discussion that the bank would protect Martin. But it is unnecessary to explore or determine the question whether the bank was under an enforceable obligation to protect Martin against liability or loss upon the bond. Ordinary as used in the statute has the connotation of normal, customary, and usual. Deputy v. du Pont, supra. The transaction giving rise to the execution of the bond and later resulting in payment of the judgment and outlay for attorneys' fees was not normal, customary, or usual in the field of bank practices. On the contrary, it was extraordinary and fell well outside the perimeter of conventional bank practices. And therefore the amount which the bank paid out was not ordinary expense incurred and paid in the conduct of the business of the bank, within the intent and meaning of section 23, supra.

Other contentions are urged for reversal of the judgment but examination of them makes it plain that they are without merit and do not call for discussion.

The judgment is affirmed.