Arthur W. MIRES, Trustee of the Monte H. Goldman Revocable Living Trust; Julian P. Kornfeld, Executor of the Estate of Alfred D. Goldman, Deceased; Julian P. Kornfeld, Trustee of the Alfred Dreyfus Goldman Revocable Living Trust; Arthur W. Mires, Trustee of the Margaret K. Goldman Trust For Monte H. Goldman; Arthur W. Mires, Trustee of the Jack Katz Trust for Monte H. Goldman; Arthur W. Mires, Trustee of the S.N. Goldman Trust for Monte H. Goldman; Arthur W. Mires, Trustee of the S.N. Goldman Trust for the Children of Monte H. Goldman; Julian P. Kornfeld, Trustee of the Monte H. Goldman Trust for Alfred D. Goldman; Julian P. Kornfeld, Trustee of the S.N. Goldman Trust for Alfred D. Goldman; Julian P. Kornfeld, Trustee of the S.N. Goldman Trust for Alfred Dreyfus Goldman; Arthur W. Mires, Trustee of the S.N. Goldman Irrevocable Trust for Monte H. Goldman; Julian P. Kornfeld, Trustee of the S.N. Goldman Trust for the Children of Alfred D. Goldman; Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

No. CIV–03–982–R.

United States District Court, W.D. Oklahoma.

April 13, 2005.

to employ them and is now time-barred from doing so. *Fitzgerald,* 403 F.3d 1134, 1136.

Clarke L. Randall, Marcelo M. Puiggari, Kornfeld Franklin Renegar & Randall, Oklahoma City, OK, for Plaintiffs.

Teresa Dondlinger Trissell, US Dept of Justice Tax Div., Washington, DC, for Defendant.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are the Plaintiffs' motion for summary judgment and the Defendant's motion for summary judgment.

The motions came on for oral argument on March 22, 2005, with Mr. Clarke L. Randall of the law firm of Kornfeld Franklin Renegar & Randall appearing on behalf of the Plaintiffs, and Ms. Teresa Dondlinger Trissell of the United States Department of Justice appearing on behalf of the United States.

### I. *Summary of the Evidence.*

The Plaintiffs, the estate of Alfred D. Goldman and various trusts established for the benefit of Alfred D. Goldman and his brother Monte H. Goldman, bring this suit seeking to recover federal income tax overpayments made in the tax years 1990, 1991 and 1992. The Plaintiffs allege that the overpayments resulted from their failure to claim as deductible expenses certain amounts paid for legal and accounting fees incurred in connection with a lawsuit brought in the District Court of Oklahoma County by Monte Goldman against Alfred Goldman. The Internal Revenue Service has denied the Plaintiffs' claims for refund of the alleged overpayments.

The parties have stipulated to most of the relevant facts. (See Stipulation of Material Facts not in Dispute). Alfred and Monte Goldman were the only children of the late S.N. Goldman, a successful entrepreneur with sizeable real estate holdings and other business interests, and his wife, Margaret Goldman. During their lifetimes, S.N. and Margaret Goldman created a number of trusts for the benefit of Alfred Goldman and Monte Goldman. Over a period of years, the Alfred and Monte Goldman trusts became the owners of the majority of S.N. Goldman's lucrative business enterprises. After S.N. Goldman

died in 1984, Alfred Goldman moved from Honolulu, Hawaii to Oklahoma City and, with Monte Goldman's consent, took over the active management of the various Goldman business entities. By the terms of their wills and living trusts, S.N. Goldman and Margaret Goldman left their respective estates in equal trusts for the benefit of Alfred and Monte Goldman.

At all times, Alfred and Monte Goldman, or their respective trusts, owned equal shares of the real property, partnerships and corporate stock held by their various trusts. Alfred and Monte Goldman always regarded themselves as equal owners of or partners in the various Goldman business entities, and expected to share equally in the profits and losses of the Goldman business entities.

One of the Goldman business entities is Primco Management Company ("Primco"), an Oklahoma corporation whose stock is held equally by the revocable living trusts established for Alfred Goldman and Monte Goldman. Primco was actively engaged in the business of performing the administrative functions of the other Goldman entities, including general administration, bookkeeping, preparation of federal and state tax returns, managing and leasing of the real estate held by the Goldman entities, the collection of rent for said real estate, the hiring of various professional consultants including attorneys, account-

ants, investment advisors, and engineers, as needed.

In the years following the deaths of their parents, the relationship between Monte and Alfred Goldman deteriorated. Alfred Goldman came to believe that he was entitled to a larger share of the assets because he had managed the jointly owned investment properties, and because Monte Goldman had taken larger withdrawals over the years. In August 1986, Alfred Goldman unilaterally placed Monte Goldman on a monthly "allowance" of $8,000.00, at a time when the Goldman entities drew an aggregate, annual income of approximately $4,000,000.00.

On March 16, 1990, Monte Goldman demanded that Alfred Goldman render an accounting to him of the funds held by the Goldman entities, distribute to him fifty percent of all income and profits generated by the Goldman entities, and make the books and records of the Goldman entities available to him and/or his attorneys and accountants. After this demand, Alfred Goldman appropriated to his own use virtually all of the cash from the various Goldman entities, amounting to approximately $23 million,[1] by executing loans from the various Goldman entities to five separate trusts of which he was the beneficiary. Alfred Goldman transferred approximately $22.6 million [2] of this $23 mil-

1. The state court's order approving the parties' settlement of the state court litigation identifies the amount of cash Alfred Goldman withdrew from the Goldman entities on March 26, 27 and 28, 1990 as "approximately $23,177,388.00." The parties' Stipulation of Material Facts Not in Dispute, par. 24, recites that Alfred Goldman appropriated "approximately $23,125,000.00" in cash from the Goldman entities. The parties have not explained the discrepancy between these figures; however, the discrepancy does not appear to be material to the issues raised in this litigation.

2. The state court's order alleges that after being served with a temporary restraining order, Alfred Goldman flew by private jet to Switzerland, where he caused "approximately $22,600,000.00" of the misappropriated funds to be transferred to a bank in Liechtenstein. In their Stipulation, the parties have agreed that Alfred Goldman transferred $22,700,000.00 of the misappropriated funds to the foreign bank accounts. The parties have not explained the discrepancy between these figures; however, it does not appear that this discrepancy is material to the issues before the Court in this proceeding.

lion to foreign bank accounts in the Isle of Man, and then to a bank account in Switzerland. Alfred Goldman also caused 29 parcels of real estate owned by various Goldman entities to be conveyed to the Alfred D. Goldman Revocable Living Trust by quitclaim deed.

It is undisputed that Alfred Goldman took the foregoing actions willfully and intentionally, believing that he was entitled to compensation for his operation of the Goldman entities without assistance from Monte Goldman, and entitled to compensation for an "imbalance" between the amounts of money he and Monte Goldman had withdrawn from the Goldman entities in the preceding years. (See Stipulation of Material Facts Not in Dispute, par. 33). On April 3, 1990, Monte Goldman brought suit in the District Court of Oklahoma County against Alfred Goldman and several employees of Primco Management Company. (Stipulation of Material Facts Not in Dispute, pars. 34, 35).

The state court promptly issued temporary restraining orders, restraining the Primco employees and Alfred Goldman from various acts, and directing them to return various items of property to Monte Goldman. (Stipulation of Material. Facts Not in Dispute, pars. 36, 37). On April 11, 1990, the state court entered an order appointing a receiver over the various Goldman entities, and continuing in effect the temporary restraining order, prohibiting Alfred Goldman and the Primco employees from further transferring the approximately $22.6 million.

Alfred Goldman filed a counterclaim in the state court proceedings, asserting a claim for an accounting and "balancing" of the jointly owned accounts, a claim declaring himself to be the owner of certain real properties, and a claim for compensation for his services as manager of the jointly owned properties. The parties litigated their dispute in Oklahoma County District Court "with great zeal," including a two-phase trial and numerous hearings, from 1990 through 1992. (Stipulation of Material Facts Not in Dispute, par. 44). The state court denied Alfred Goldman's counterclaim for compensation for his management services, finding that he had no written or oral contract for compensation, no reasonable expectation of compensation, and further finding that Alfred Goldman had conducted the business of the Goldman entities of his own volition.

The parties reached a settlement in the state court suit, and executed a Release and Settlement Agreement on July 11, 1994. The settlement agreement provides that the historic "imbalance" between the amounts received by the parties during the accounting period, as determined by the court, was to be paid from property dispositions. The settlement agreement noted that Alfred Goldman's trusts had received payments toward the imbalance aggregating $2,077,000.00, and that the remaining amount of the imbalance was $7,000,000.00.[3] The parties incurred attorney's fees in connection with the state court litigation aggregating $2,554,437.00, and accounting fees of $352,500.00, all of which were paid by Primco Management Co. Primco, as a sub-chapter S corpora-

---

**3.** As described in the settlement agreement, the imbalance between the non-business withdrawals made by Monte Goldman and those made by Alfred Goldman totaled approximately $9,077,000.00 The parties' written Stipulation states that the imbalance between the non-business withdrawals made by Monte and Alfred Goldman totaled $11,442,111.00. (Stipulation of Material Facts Not in Dispute, par. 42). The parties have not explained this discrepancy, and it does not appear that this discrepancy is material to the issues before the Court.

tion, deducted the legal and accounting fees on its income tax returns for the years 1990, 1991 and 1992. The Internal Revenue Service disallowed Primco's deductions for accounting fees, and allowed Primco to deduct only that portion of the attorney's fees which Primco had paid to defend the Primco employees named as defendants in the state court lawsuit.

Primco Management Co. filed a petition in the United States Tax Court, challenging the disallowance of its deductions. Primco and the Internal Revenue Service settled the Primco Tax Court litigation, with Primco conceding that the deductions were not allowed to Primco. When the Primco deductions were disallowed, the corresponding distributable net losses which Alfred Goldman had claimed on his 1990, 1991 and 1992 income taxes as a Primco stockholder were reduced accordingly.[4] (Stipulation of Material Facts Not in Dispute, par. 56). The reduction of distributable net losses had the effect of increasing Alfred Goldman's ˙federal income tax liability for the years in question by the following amounts:

 1990: $165,089.00
 1991: $160,207.00
 1992: $ 63,575.00

**4.** According to the Stipulation of Material Facts executed by the parties in this case, the distributable net losses allocable to Alfred Goldman and Monte Goldman were reduced by $693,419.00 each for the tax year 1990, by $516,799.00 each for the tax year 1991, and by $206,507.00 each for the tax year 1992.

**5.** The parties have stipulated that the reduction in distributable net losses had no effect on Monte Goldman's income taxes for those years because Monte Goldman did not have sufficient remaining basis in Primco, and thus had not claimed the losses. (Stipulation of Material Facts Not in Dispute, par. 56). See Title 26 U.S.C. § 165(a) and (b).

**6.** Evidently Monte Goldman died in either 1999 or early 2000, but the exact date of his death does not appear in the record.

These amounts were assessed against Alfred Goldman on May 17, 1999. (Stipulation of Material Facts Not in Dispute, par. 56).[5]

Following the death of Monte Goldman, the executor of his estate filed claims for refund with respect to his 1990, 1991 and 1992 federal income taxes in December 1994.[6] The Internal Revenue Service did not issue a formal disallowance letter with respect to these claims, but the estate of Monte Goldman filed a petition in the United States Tax Court with respect to his 1990 and 1991 federal tax liability. On May 5, 2000, the Tax Court entered an agreed decision, stating that there was no deficiency in taxes owing by Monte Goldman's estate, and no overpayment due to Monte Goldman's estate for the years 1990 and 1991.

Plaintiff Arthur W. Mires, as trustee of the Monte H. Goldman Revocable Living Trust, has made no claims for refunds on behalf of that trust. On November 15, 1994, Plaintiff Arthur W. Mires, as trustee of various other trusts for the benefit of Monte Goldman, filed claims for refunds for the years 1990, 1991 and 1992.[7] The

**7.** Mr. Mires sought refunds on behalf of the Margaret K. Goldman Trust for Monte H. Goldman in the amount of $33,969.68 for 1990, and $20,633.58 for 1992. He sought refunds on behalf of the Jack Katz Trust for Monte H. Goldman in the amount of $54,036.40 for 1991, and $48,526.95 for 1992. He sought refunds on behalf of the S.N. Goldman Trust for Monte H. Goldman in the amount of $236,089.71 for 1990, and $20,915.43 for 1991. He sought a refund on behalf of the S.N. Goldman Irrevocable Trust for Monte H. Goldman for the year 1992 in the amount of $137815.06, and refunds on behalf of the S.N. Goldman Trust for the Children of Monte H. Goldman in the amount of $329,402.57 for 1990, and $43,452.83 for 1991. (See Stipulation of Material Facts Not in Dispute, pars. 63—66, 70).

Internal Revenue Service disallowed the refund claims asserted by these trusts in May 2002, citing the trustees' failure to provide supporting documentation showing that the legal and accounting expenses were the trusts' own expenses, and that the expenses were either paid by the trusts or on their behalf by Primco Management Company. See Stipulation of Material Facts Not in Dispute, pars. 63—66, 70.

Plaintiff Julian P. Kornfeld, as trustee of the Alfred Dreyfus Goldman Revocable Living Trust, has not filed tax returns or made claims for refunds for the years 1990, 1991 and 1992. On November 15, 1994, Mr. Kornfeld filed claims for refunds for the years 1990, 1991 and 1992 on behalf of various other trusts for the benefit of Alfred Goldman.[8] The Internal Revenue Service disallowed these claims on May 10, 2002, citing the trusts' failure to provide supporting documentation showing that the legal and accounting expenses were the trusts' own expenses, and that the expenses were either paid by the trusts or on the trusts' behalf by Primco Management Company. See Stipulation of Material Facts Not in Dispute, pars. 66—69, 71.

On December 9, 1994, Alfred Goldman filed amended federal income tax returns for the years 1990, 1991 and 1992, claiming refunds based upon his deductions for the attorney's fees and accounting fees at issue in this case. The Internal Revenue Service denied those deductions, and assessed additional taxes accordingly. On October 22, 2004, after Alfred Goldman's death,

Julian Kornfeld, as executor of his estate, paid federal income taxes assessed against Alfred Goldman for the years 1990, 1991 and 1992. This resulted in full payment of all income taxes assessed against Alfred Goldman for those years. By letter dated October 25, 2004, the Internal Revenue Service disallowed the claims for refund filed on behalf of Alfred D. Goldman.

## II. *Claims of Plaintiffs Other Than the Estate of Alfred Goldman.*

The Complaint was initially filed on behalf of six trusts established for the benefit of Monte Goldman, five trusts established for the benefit of Alfred Goldman, and the Estate of Alfred Goldman. As the case has progressed, it has become apparent that the Plaintiffs are now asserting claims for refund only on behalf of the estate of Alfred Goldman.

It is undisputed that on May 5, 2000, Monte Goldman's estate entered into an agreed decision with the Commissioner of Internal Revenue, agreeing that there was no overpayment due to Monte Goldman for the tax years 1990 and 1991. (Stipulation of Material Facts Not in Dispute, par. 58). On November 25, 1998, the estate of Monte Goldman conceded in a separate Tax Court proceeding that Monte Goldman was due no overpayment with respect to his 1992 taxes. (Government's Exhibit No. 2). The Government argued, in support of its motions, that the concessions made on behalf of Monte Goldman's estate should also preclude all of his trusts from pursuing his claims for a refund under the doctrines of res judicata and judicial estoppel.

---

**8.** Mr. Kornfeld sought refunds on behalf of the Monte H. Goldman Trust for Alfred D. Goldman in the amounts of $42,414.73 for 1990, $8,722.27 for 1991, and $4,997.11 for 1992. Mr. Kornfeld sought refunds on behalf of the S.N. Goldman Trust for Alfred D. Goldman in the amounts of $236,203.02 for 1990, and $18,499.27 for 1991. Mr. Kornfeld sought refunds on behalf of the S.N. Goldman Trust for Alfred Dreyfus Goldman in the amounts of $332,815.95 for 1990, and $20,933.32 for 1991. Mr. Kornfeld sought refunds on behalf of the S.N. Goldman Trust for the Children of Alfred D. Goldman in the amounts of $55,099.35 for 1991, and $77,621.19 for 1992. (See Stipulation of Material Facts Not in Dispute, pars. 67—69, 71).

In their response brief, the Plaintiffs have conceded that "Monte's claims should be denied, due to the application of res judicata." (Plaintiffs' response brief, p. 10). Counsel for the Plaintiff clarified at the hearing on the instant motions that the Plaintiffs had abandoned all claims asserted on behalf of the various Monte Goldman trusts.[9]

The Government has also argued that the Plaintiff have not substantiated the refund claims asserted on behalf of the various trusts established for the benefit of Alfred Goldman. At the hearing on the instant motions, the Plaintiffs conceded that "substantiation is lacking" with respect to the Alfred Goldman trusts, and that the Plaintiffs were now "concentrating" solely on the claims made on behalf of the Alfred Goldman estate.

In light of the undisputed evidence and the Plaintiffs' concessions, the Court finds that the Government is entitled to summary judgment on the claims for refund asserted on behalf of Arthur W. Mires, Trustee of the Monte H. Goldman Revocable Living Trust; Julian P. Kornfeld, Trustee of the Alfred Dreyfus Goldman Revocable Living Trust; Arthur W. Mires, Trustee of the Margaret K. Goldman Trust for Monte H. Goldman; Arthur W. Mires, Trustee of the Jack Katz Trust for Monte H. Goldman; Arthur W. Mires, Trustee of the S.N. Goldman Trust for Monte H. Goldman; Arthur W. Mires, Trustee of the S.N. Goldman Trust for the Children of Monte Goldman; Julian P. Kornfeld, Trustee of the Monte H. Goldman Trust for Alfred D. Goldman; Julian P. Kornfeld, Trustee of the S.N. Goldman Trust for Alfred D. Goldman; Julian P. Kornfeld, Trustee of the S.N. Goldman Trust for Alfred Dreyfus Goldman; Arthur W. Mires, Trustee of the S.N. Goldman Revocable Living Trust for Monte H. Goldman; and Julian P. Kornfeld, Trustee of the S.N. Goldman Trust for the Children of Alfred D. Goldman.

### III. *Ordinary and Necessary Business Expenses.*

The remaining Plaintiff, Julian P. Kornfeld, Executor of the Estate of Alfred Goldman, asserts claims for a refund on the ground that the attorney's fees and accounting fees incurred in the state court lawsuits were ordinary and necessary "trade or business expenses" under Section 162(a) of the Internal Revenue Code,[10] or ordinary and necessary "expenses for the production of income" under Section 212 of the Code.[11] The Government argues that the litigation expenses at issue are not deductible as business expenses under ei-

---

9. Counsel for the Plaintiff stated:

 "The Court: Before we start, ... is it correct that all of the Monte Goldman entities are out of this case?
 Mr. Randall: That's correct, Your Honor.
 The Court: Why were they -
 Mr. Randall: For two reasons. One year has already been adjudicated res judicata that year. The Monte Goldman entities never claimed a deduction for the attorney fees at issue, so they really didn't have a refund claim. We filed the claim on behalf of everybody, because we didn't know at that point who was going to be entitled to the deduction. But the Monte Goldman entities are out."

10. Section 162(a) of the Internal Revenue Code provides, in pertinent part: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business...." Title 26 U.S.C. § 162(a).

11. Section 212 provides that, "[I]n the case of an individual, there shall be allowed as a deduction, all ordinary and necessary expenses paid or incurred during the taxable year—(1) for the production of collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax." Title 26 U.S.C. § 212.

ther provision, either because the state court lawsuit was personal in nature, or because the litigation expenses are properly treated as capital expenditures under Section 263 of the Internal Revenue Code, Title 26 U.S.C. § 263.[12] *See also Commissioner of Internal Revenue v. Idaho Power Co.,* 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974) (The purpose of Section 263 is to reflect the basic principle that a capital expenditure may not be deducted from current income); *E.I. du Pont De Nemours & Co. v. Commissioner of Internal Revenue,* 432 F.2d 1052, 1059 (3rd Cir. 1970) (An expenditure is a capital expenditure if it resulted in a benefit to the taxpayer which could be expected to produce returns in future years.).[13]

 Statutory provisions for income tax deductions are strictly construed, and the taxpayer bears the burden of showing that a claimed deduction falls within the statutory provisions. *INDOPCO, Inc. v. Commissioner of Internal Revenue,* 503 U.S. 79, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992) (Deductions are strictly construed and allowed only as there is clear provision therefor).[14] The terms "ordinary and necessary" have the same meaning in Section 162(a) as they do in Section 212. *Powell v. Floyd,* 198 F.3d 237, 1999 WL 812315 (4th Cir.1999); *Honodel v. Commissioner of Internal Revenue,* 722 F.2d 1462, fn. 1 (9th Cir.1984). The treasury regulation interpreting Section 212 of the Internal Revenue Code provides that expenses paid or incurred in "managing or conserving" property held for investment, and administration expenses, including litigation expenses, paid by the fiduciary of a trust in connection with the duties of administration are deductible under that Section. *See* 26 C.F.R. § 1.212–1(b), (i).[15] Section 1.212–1(b), however, is limited by Sections

12. Section 263 provides, in part:
 "**Capital expenditures.**
 (a) General rule.—No deduction shall be allowed for -
 (1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. . . ."

13. *See also Estate of Meade v. Commissioner of Internal Revenue,* 489 F.2d 161 (5th Cir. 1974) (For purposes of distinguishing between capital expenses and "ordinary" business expenses, sections 162 and 212 are construed in the same manner, except that Section 212 permits deductions for the ordinary and necessary expenses of non-business profit-making activities).

14. *See also Commissioner of Internal Revenue v. Thompson,* 193 F.2d 586 (10th Cir.1951) (Deductions from gross income are allowed as matter of legislative grace and taxpayer claiming deduction has burden of pointing to statute authorizing deduction and of bringing himself clearly within its terms). *See also Interstate Transit Lines v. Commissioner of Internal Revenue,* 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943) (An income tax deduction is a matter of legislative grace, and the burden of clearly showing the right to the claimed deduction is on the taxpayer); *Okemah National Bank v. Wiseman,* 253 F.2d 223, 225 (10th Cir.1958), *cert. denied,* 358 U.S. 821, 79 S.Ct. 32, 3 L.Ed.2d 62 (1958).

15. Treasury Regulation Section 1.212–1, 26 C.F.R. § 1.212–1, provides, in part:
 "(b) Expenses paid or incurred in managing, conserving or maintaining property held for investment may be deductible under section 212 even though the property is not currently productive and there is no likelihood that the property will be sold at a profit or will otherwise be productive of income and even though the property is held merely to minimize a loss with respect thereto. . .
 (i) Reasonable amounts paid or incurred by the fiduciary of an estate or trust on account of administration expenses, including fiduciaries' fees and expenses of litigation, which are ordinary and necessary in connection with the performance of the duties of administration are deductible under section 212, notwithstanding that the estate or trust is not engaged in a trade or business. . . ."

262 and 263 of the Tax Code, which provide, respectively, that "personal, living or family expenses," and "capital" expenditures are not deductible. *See United States v. Gilmore*, 372 U.S. 39, 46, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963) (Interpreting predecessor provisions of Sections 162 and 262). Furthermore, Section 1.212–1 provides that expenses incurred in defending or perfecting title to property, in recovering property, or in developing and improving property, constitute a part of the cost of the property, and are not deductible as business expenses. 26 C.F.R. § 1.212–1(k).[16]

■■■ The Supreme Court has developed the "origin of the claim" test to determine whether litigation expenses may be deductible as business expenses. *See United States v. Gilmore*, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963). Under the origin of the claim test, it is the origin and character of the claim for which litigation expenses are incurred, rather than the potential consequences upon the fortunes of the taxpayer, which determines whether an expense was "business" or "personal," and hence, whether it is deductible under Section 162 or Section 212. The "origin of the claim" test does not contemplate a mechanical search for the first in the chain of events which led to the litigation but, rather, requires an examination of all of the facts, including the kind of transaction out of which the litigation arose, the issues involved, the defenses raised, and other facts pertaining to the controversy which led to the lawsuit. *Peters, Gamm, West & Vincent, Inc. v. Commissioner of Internal Revenue*, 1996 WL 182545 (U.S.Tax Ct.1996). *See also Kopp's Company v. United States*, 636 F.2d 59 (4th Cir. 1980);[17] *Burch v. United States*, 698 F.2d 575, 577 (2nd Cir.1983). In applying the origin of the claim test, the proper focus is not upon the potential consequence of the litigation, but rather upon the origin and character of the controversy which led to the expenses. *Barr v. Commissioner of Internal Revenue*, 1989 WL 90207 (U.S.Tax Ct.1989).[18] *See also Walsh v.*

---

16. 26 C.F.R. § 1.212–1(k) provides:

"(k) Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in gross income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. Attorneys' fees paid in a suit to quiet title to lands are not deductible; but if the suit is also to collect accrued rents thereon, that portion of such fees is deductible which is properly allocable to the services rendered in collecting such rents. Expenses paid or incurred in protecting or asserting one's right to property of a decedent as heir or legatee, or as beneficiary under a testamentary trust, are not deductible."

17. The Fourth Circuit in *Kopp's Company* held that under the origin of the claim test, a closely held corporation was allowed to deduct the costs of settling a personal injury suit in which it had been named as a third party defendant, where the corporation bore potential liability.

18. In *Barr v. Commissioner of Internal Revenue*, 1989 WL 90207 (U.S.Tax Ct.1989), the taxpayer challenged the Commissioner's disallowance of her deduction for litigation expenses she had incurred in a suit against her brother as the trustee of a family trust. In the underlying lawsuit, the taxpayer complained that her brother had made several low-interest loans to other entities in which he had an interest, and that as a result of the loans, the trust did not generate the income it should have. The taxpayer asserted several causes of action against her brother, including a claim for breach of fiduciary duty related to the loan transactions, a claim seeking to remove him as trustee, and a claim alleging a conspiracy with a third party. The suit sought damages as well as the imposition of a constructive trust. The Tax Court acknowledged that one potential result or consequence of a claim for a constructive trust would be a conveyance of title to the property involved in the

*United States,* 1977 WL 4336 (N.D.Tex. 1977) (Fiduciary could deduct legal fees on income tax return as a cost of conserving the trust; although title perfection or defense was involved in the underlying litigation, the "primary purpose" of the litigation was administrative in nature).

 It appears from the undisputed evidence in this case that Alfred Goldman's conduct in absconding with property owned jointly by himself and Monte Goldman was the "origin" of Monte Goldman's claims in the underlying state court lawsuit. Similarly, it is undisputed that Monte Goldman's disproportionately larger withdrawals from the Goldman entities, which exceeded Alfred Goldman's withdrawals by approximately $11 million over a period of years, was the "origin" of Alfred Goldman's counterclaim for an accounting in the state court lawsuit.[19] Thus, the income producing Goldman entities were the origin of the claims raised by both parties in the state court litigation.

### A. *Personal or Business Dispute.*

 The Court next addresses the Government's argument that under *United States v. Gilmore,* 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963), the state court litigation between Monte Goldman and Arthur Goldman was "personal" in nature, and that the litigation expenses are thus not deductible because they are personal, rather than business expenses. The taxpayer in *Gilmore* sought to deduct attor-

neys' fees he had incurred in a contested divorce proceeding, arguing that an unfavorable decision in the divorce case would give his wife control over the car dealerships from which much of his income was derived, and render it unlikely that his dealership contract with the manufacturer would be renewed. In that context, the Supreme Court concluded that the origin of the divorce proceeding was "personal" rather than "business," so that the expenses incurred in that proceeding were not deductible. *Id.*

This case is distinguishable from *Gilmore, supra.* Although Alfred and Monte Goldman were brothers, it is clear that the litigation between them arose out of their business relationship, i.e., their joint ownership interests in the Goldman business entities, rather than their familial relationship. In a divorce proceeding, such as the underlying suit in *Gilmore,* the origin of the suit is the marital relationship. Ordinarily, the primary purpose of a divorce proceeding is the dissolution of the marriage, and a property division is made as an incident thereto. In this case, the state court suit arose out of Alfred Goldman's attempts to misappropriate jointly owned, income producing property. The bulk of Monte Goldman's claims and Alfred Goldman's counterclaims in the state court lawsuit involved an accounting of the business conducted by the Goldman entities, and the amounts withdrawn from those busi-

---

loan transactions. The court explained, however, that the proper focus is not upon the potential consequence of the litigation, but rather upon the origin and character of the controversy which led to the expenses. The court found that the origin of the taxpayer's claims was not the conveyance of title, but her brother's self-dealing, and the resulting loss of income. In *Barr,* the Tax Court reasoned that the character of the claim was the recovery of taxable income lost because the brother, as trustee, breached his fiduciary

duty to the taxpayer. The Government argues that *Barr* is distinguishable from this case, because the underlying lawsuit in *Barr* did not allege or involve the "taking" of property, as in this case, but the use of property in a manner resulting in a loss of income.

**19.** In his counterclaim, Alfred Goldman also asserted a claim for compensation for his services in managing the Goldman businesses. The state court rejected this claim.

ness entities by each of the parties. The fact that Alfred and Monte Goldman were also brothers does not compel a finding that the litigation expenses were personal and non-deductible, and the Government is not entitled to summary judgment on this basis.

## B. *Capital Expenditures.*

■ The Government argues that the litigation expenses incurred in the state court proceedings were "capital" in nature, rather than ordinary expenses, because Monte Goldman's claims in the state court litigation sounded in conversion. The Government alleges that Monte Goldman's purpose in bringing the state court suit was to recover "title" to the $23 million in funds belonging to him and his trusts, and to defend or perfect title to the jointly owned real property which had been deeded to Alfred Goldman's revocable living trust by quitclaim deed. Citing 26 C.F.R. § 1.212–1(k), the Government argues that the litigation fees incurred in the state court suit were capital expenditures, and not deductible as business expenses.

Under Treasury Regulation 1.212–1(k), expenses paid in defending or perfecting title to property constitute a part of the cost of the property, and thus are capital expenditures and not deductible as business expenses. *See Kelly v. Commissioner of Internal Revenue*, 228 F.2d 512 (7th Cir.1956) (Amounts taxpayer spent in successful suit to establish title to property in a dispute with his sister over ownership of the property were capital expenditures, and thus not deductible as ordinary and necessary business expenses).[20] Expenses paid in recovering investment property and the income therefrom are deductible. 26 C.F.R. § 1.212–1(k).

The parties to this case have stipulated that in late March 1990, Alfred Goldman collected approximately $23 million in cash from the Goldman entities, and caused the conveyance by quitclaim deed of 29 parcels of real estate owned by various Goldman entities to the Alfred D. Goldman Revocable Living Trust. (Stipulation of Material Facts Not in Dispute, par. 27). The Plaintiffs contend that the parties to the state court litigation "always recognized that Monte and Alfred [Goldman] were each 50% owners of the Goldman Entities."

It appears from the undisputed facts that title issues were neither the sole focus nor the primary focus of the state court litigation. The state court quickly resolved any question of title in an order entered approximately two months after the lawsuit commenced.[21] (Stipulation of Material Facts Not in Dispute, par. 39).

**20.** In *Kelly*, the taxpayer's father executed deeds in favor of the taxpayer's sister but did not deliver them. Upon the father's death, the taxpayer and his sister recorded the deeds, but treated the property as jointly owned, opening a joint bank account into which the rents were deposited. Before and after his father's death, the taxpayer spent money to pay off mortgages against the properties. Years later, the sister, through a third party, executed a deed conveying the property to herself and her husband as joint tenants. The taxpayer successfully sued his sister, obtaining a decree that he was the owner of a one-half interest in the property, as well as a money judgment for a share of the money he had paid on the mortgage. Because the ori-

gin of the claims asserted in the underlying lawsuit was the dispute as to the true ownership of the property, the Seventh Circuit held that the taxpayer's attorney's fees were capital expenditures, and not deductible as ordinary and necessary business expenses. It appears that the underlying litigation in *Kelly* involved primarily disputed issues of title, in contrast to this case, in which the underlying litigation involved allegations of the wrongful taking of property of practically undisputed ownership.

**21.** According to the parties' Stipulation of Material Facts Not in Dispute, on May 29, 1990 the Oklahoma County Court ordered that all cash funds which Alfred Goldman had withdrawn from the various Goldman entities

Thus, although that portion of the litigation expenses which may be attributable to the "title" issues presented in the state court litigation may not be deductible, the existence of peripheral issues relating to title does not preclude deduction of all of the litigation expenses. *Ruoff v. Commissioner of Internal Revenue*, 277 F.2d 222 (3rd Cir.1960); *Barr v. Commissioner of Internal Revenue*, 57 T.C.M. 1261, 1989 WL 90207 (U.S.Tax Ct.1989).[22] *See also Walsh v. United States*, 1977 WL 4336 (N.D.Tex.1977) (Where title to property is not the central issue in the litigation, or the origin of the claims asserted in the litigation, the mere fact that "title" happens to be involved does not necessarily mean that litigation expenses are nondeductible).[23]

### IV. *Public Policy.*

■ The Government next argues that the estate of Alfred Goldman should not be permitted to deduct the litigation costs as a matter of public policy. As the Government points out, in October 1992, the Oklahoma County court found that Alfred Goldman had violated the terms of its temporary restraining order. The court found that Monte Goldman had brought suit in New York and overseas to halt further transfers of funds by Alfred Goldman. (Stipulation of Material Facts Not in Dispute, par. 47). The court found that Monte Goldman had incurred $275,000.00 in litigation expenses, including bonding costs, attorney's fees and court costs, due to Alfred Goldman's failure to obey the temporary restraining order. (*Id.*). The state court further found that Alfred Goldman was liable for the payment of Monte Goldman's court costs and attorney's fees incurred in prosecuting a contempt citation, totaling $430,049.82. (*Id.*). These amounts are included in the amounts which Primco Management Co. ultimately paid, and which were disallowed by the Internal Revenue Service as deductions by Primco. The undisputed evidence shows that a substantial, but unspecified, portion of the legal fees and accounting fees at issue in this case are attributable to Alfred Goldman's willful misconduct in misappropriating jointly owned assets, and moving them to offshore bank accounts.

■ The Government cites no legal authority for its public policy argument. The

---

be returned to Primco Management Co. as custodian; that an accounting be made to determine the parties' respective rights to assets; and that all real property previously conveyed to Alfred Goldman or his Revocable Living Trust were to be reconveyed back to the original, joint owners. (Stipulation of Material Facts Not in Dispute, par. 39).

22. In *Ruoff*, the taxpayer was a United States citizen who remained in Germany during World War II. In 1948, the Attorney General of the United States issued a vesting order under the Trading with the Enemy Act, vesting in the Government all of the taxpayer's assets in the United States, and seized said assets. The taxpayer retained attorneys, who filed with the Attorney General a notice of claim on behalf of the taxpayer, seeking the return of the taxpayer's property. In 1953, the taxpayer and the Attorney General entered into a stipulation settling their dispute.

The taxpayer and her husband deducted the attorney's fees from gross income on their 1953 income tax return, and the Commissioner of Internal Revenue denied the deduction. The Third Circuit reversed the Commissioner's decision, reasoning that the vesting order did not, ipso facto, confer title to the seized assets upon the Government. The court found that the taxpayer had retained counsel to pursue the remedies available to her under the Trading with the Enemy Act to "undo" the vesting of her income-producing property, and that the services of the taxpayer's counsel were in conservation of that property. *Ruoff*, 277 F.2d 222, 226—227.

23. The Court addresses in the following paragraphs the Government's argument that the Plaintiffs have failed to offer evidence sufficient to enable the Court to make an allocation between those fees which are attributable to different claims.

Court nevertheless finds those fees imposed by the state court upon Alfred Goldman as a sanction for his misconduct to be analogous to a fine or penalty. It is well established that fines and penalties are not deductible as ordinary business expenses. *See, e.g., Tank Truck Rentals, Inc. v. Commissioner of Internal Revenue*, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562 (1958) (Fines imposed by state upon truckers as penal measure for hauling excess weight were penalties, not deductible in computing truckers' federal income tax); *Commissioner of Internal Revenue v. Heininger*, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171 (1943); *United States v. Wolf*, 90 F.3d 191 (7th Cir.1996) (A fine is punitive in nature, and is therefore not tax deductible; restitution is not punitive in nature and is deductible); *A.D. Juilliard & Co. v. Johnson*, 259 F.2d 837, 844 (2nd Cir.1958) (Treble damages for Emergency Price Control Act constituted a civil penalty and were not deductible), *cert. denied*, 359 U.S. 942, 79 S.Ct. 723, 3 L.Ed.2d 676 (1959). *See also True v. United States*, 894 F.2d 1197 (10th Cir.1990). For the same reasons, the Court concludes that those litigation expenses imposed as sanctions upon Alfred Goldman solely as a result of his violation of a valid temporary restraining order should not be deductible by his estate as "ordinary and necessary" business expenses.

## V. Failure to Substantiate Deductions.

The Government next argues that the Plaintiffs have not adequately substantiated Alfred Goldman's right to the deductions for which his estate now seeks a refund, or the amount of such refund. The exact amount of the refund sought by the Estate of Alfred Goldman is not entirely clear from the Plaintiffs' pleadings. It appears, however, that the Estate of Alfred Goldman is asserting a right to deduct the entire amount of the attorney's fees and accounting fees paid by Primco in the underlying state court proceedings.[24] It is clear from the undisputed evidence and the parties' stipulations that the Estate of Alfred Goldman, the sole remaining Plaintiff, is not entitled to deduct the entire amount of the attorney's fees and accounting fees paid by Primco. Although the total amount of attorney's fees and accounting fees paid by Primco in the state

---

**24.** The Court interprets the Plaintiffs' pleadings and briefs as asserting a refund on behalf of the Estate of Alfred Goldman in an unspecified amount which would reflect a deduction of the entire amount of the attorney's fees and accounting fees at issue in this case. The attorney's fees paid by Primco in the state court proceedings for the years 1990, 1991 and 1992 totaled $2,554,437.00, and the accounting fees paid for the same years totaled $352,500.00. It appears from the face of the pleadings that the Plaintiffs initially sought refunds in this proceeding in an amount which would reflect the deduction of the entire amount of the attorney's fees and accounting fees over the three year period 1990—1992. The Plaintiffs have not amended their pleadings to indicate that the remaining Plaintiff, the Estate of Alfred Goldman, is seeking to deduct a lesser amount. Another possible interpretation is that the Estate of Alfred Goldman is seeking a refund of the amount by which Alfred Goldman's tax liabilities for the years 1990, 1991 and 1992 were increased as a result of the disallowance of *Primco's* deduction of the attorney's fees and accounting fees. The parties have stipulated that when Primco's deductions of these litigation expenses were disallowed, the corresponding distributable net losses which Alfred Goldman had claimed on his income taxes as a Primco stockholder were reduced accordingly, which had the effect of increasing his federal income tax liability by $165,089.00 for 1990, $160,207.00 for 1991, and $63,575.00 for 1992. (Stipulation of Material Facts Not in Dispute, par. 56). The Court discounts this interpretation, however, because throughout this proceeding, the Plaintiffs have framed their legal arguments in terms of their right to deduct the litigation expenses from their own income taxes

court litigation is undisputed,[25] the Plaintiffs have failed to offer evidence showing which portion of the fees was incurred by each of the parties in the state court proceedings, or which portion of the fees is attributable to the various claims and defenses asserted in the state court proceedings.

 In many circumstances, litigation expenses incurred by a taxpayer may not be treated as a unified whole. Where more than one claim is involved, for example, the origin of the claim test should be applied separately to each separate part of the litigation, and the expenses allocated based on their respective "origins." *Dye v. United States,* 121 F.3d 1399 (10th Cir. 1997); *Dolese v. United States,* 605 F.2d 1146, 1151 (10th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). *See also Cohan v. Commissioner,* 39 F.2d 540 (2nd Cir.1930); *Helvering v. Stormfeltz,* 142 F.2d 982 (8th Cir.1944) (Ward who sued his guardian for money embezzled was entitled to deduct for income tax purposes that portion of his legal expenses properly allocable to the recovery of interest, but not that part of expenses properly allocable to recovery of the principal; although the interest was properly treated as income, the principal must be treated as capital); *Burch v. United States,* 698 F.2d 575 (2nd Cir.1983) (Taxpayer, the beneficiary of two trusts, brought suit to invalidate the trust agreements, to remove the trustee, and to have the court determine the trustee's fees; taxpayer's legal fees incurred in regaining title to the trust corpus were nondeductible capital expenditures, but those fees incurred for purpose of reducing the costs of management of the corpus were deductible as "conservation" or "maintenance" expenses). Similarly, treasury regulations provide that where a suit seeks both to quiet title to lands *and* to collect accrued rents, the taxpayer may deduct that portion of the attorney's fees which is properly allocable to the attorney's services rendered in collecting rents. 26 C.F.R. § 1.212–1(k).

It is undisputed that the litigation expenses at issue in this case were incurred in the representation of both Alfred Goldman and Monte Goldman, individually and as beneficiaries of their various trusts. The Plaintiffs have made no attempt to differentiate between the amounts charged by Alfred Goldman's legal counsel, and the amounts charged by Monte Goldman's legal counsel in the state court proceedings. Nor have the Plaintiffs pointed to any evidence which would permit the Court to make the necessary allocation between the parties. As the Government points out, an allocation of the fees incurred by the different parties is particularly important in this instance, since the Plaintiffs have conceded that any deduction claimed by Monte Goldman and his trusts is barred by Monte Goldman's settlement of his claims in the Tax Court.

In addition to an allocation between the various parties, the refund claim asserted on behalf of Alfred Goldman's estate requires a further allocation between the various claims asserted in the state court proceedings. Even if that portion of the litigation expenses attributable to Alfred Goldman's claim for an accounting of the trust assets would be deductible under 26 C.F.R. § 1.212–1(b) as expenses incurred in "managing, conserving or maintaining property held for investment," or in administering the various trusts, it is clear that not all of the litigation expenses fall within this category.

---

**25.** It is undisputed that Primco paid attorney's fees totaling $2,554,437.00, and ac- counting fees totaling $352,500.00, for a total of $2,906,937.00.

It is undisputed, for example, that some portion of the litigation expenses incurred by both sides in the state court litigation are directly attributable to Alfred Goldman's wrongful conversion of jointly owned assets, his efforts to hide those assets, and other deliberate misconduct. The Plaintiffs have not shown that the fees attributable to these claims were incurred in the context of "managing, conserving or maintaining property held for investment." Furthermore, for the reasons set forth in the preceding paragraphs, the Plaintiffs have not shown that the fees imposed upon Alfred Goldman as a sanction for violating the state court's temporary restraining order may be characterized as ordinary and necessary business expenses. For these reasons, it is clear that a significant portion of the fees which the Plaintiffs have sought to deduct would not be deductible by Alfred Goldman or his estate as ordinary and necessary "trade or business expenses" under Section 162(a), or as "expenses for the production of income" under Section 212 of the Internal Revenue Code.

The Plaintiffs point to no evidence which would enable the Court to make a reasoned allocation between those fees which might be considered ordinary and necessary business expenses, and thus deductible, and those fees which are clearly not deductible. The Plaintiffs have argued in this case that their inability to make an apportionment of the litigation expenses among the various parties and claims occurred through no fault of their own. The Plaintiffs point out that the state court treated all of the Goldman entities, including the Alfred Goldman and Monte Goldman trusts, as a single entity in ordering that all of the litigation expenses be paid by Primco Management Co.

 The state court's failure to make a precise accounting of the fees attributable to each party and claim does not relieve the Plaintiffs of their burden in this case. In a refund action, it is the taxpayer who bears the burden of showing his entitlement to a deduction, as well as the burden of establishing the correct amount of the deduction. *Mays v. United States,* 763 F.2d 1295, 1297 (11th Cir.1985).

The itemized fee statements of the attorneys involved in the state court proceedings would at least establish which fees were charged by the attorneys representing Alfred Goldman, and which were charged by the attorneys representing Monte Goldman. Itemized fee statements from the attorneys and accountants would likely include some information as to which portion of the fees is attributable to the various claims. The Plaintiffs in this proceeding have not offered into evidence any fee statements, or any other evidence from which the Court might attempt to make a reasoned allocation of those fees which are arguably deductible, and those which are clearly not.

Because the Plaintiffs have failed to offer evidence from which the Court might make an allocation of the litigation expenses an allocation may be made, they have failed to meet their burden of proof of establishing the right of the Estate of Alfred Goldman to a refund in any amount, and the Government is entitled to summary judgment. *Mays v. United States,* 763 F.2d 1295, 1297 (11th Cir.1985).

VI. *Sovereign Immunity.*

 In its opening brief, the Government argued that the Court lacked subject matter jurisdiction over the Plaintiffs' claims for a refund on the ground of sovereign immunity, citing the "full-pay" rule of Title 28 U.S.C. § 1346(a)(1), which requires a taxpayer to pay the disputed tax in full before suing the United States for a refund. *Flora v. United States,* 357 U.S. 63, 67—75, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958) (District court lacked jurisdiction to

entertain taxpayer-plaintiff's challenge to an income tax deficiency assessment because he had failed to first make full payment of the challenged assessment before instituting suit); *Ardalan v. United States,* 748 F.2d 1411 (10th Cir.1984) (District court is without jurisdiction where taxpayers have failed to pay the assessed deficiency).

The Plaintiffs allege that the alleged jurisdictional defect has been "cured" by the payment of the disputed taxes, and have filed an "Amendment to Stipulation of Material Facts Not in Dispute" reciting that the taxes assessed against Alfred D. Goldman have now been paid in full. The Government does not dispute the Plaintiffs' assertion that the assessed taxes have now been paid, and thus has cured the asserted jurisdictional defect.[26] The Court finds, therefore, that summary judgment is not appropriate on the basis of subject matter jurisdiction.

### VII. *Deduction of Expenses Paid by Third Party.*

The Government next contends that the estate of Alfred Goldman is not entitled to deduct the litigation expenses because neither Alfred Goldman nor his estate paid the litigation expenses, nor did they recognize Primco's payment of the litigation expenses on Alfred Goldman's behalf as income. The Plaintiffs respond that Primco's payment of the legal fees and accounting fees should be treated as a constructive distribution to Alfred Goldman, citing *Peters, Gamm, West & Vincent, Inc. v. Commissioner,* 71 T.C.M. 2789, 1996 WL 182545 (U.S.Tax Ct.1996). In light of the Court's finding that the sole remaining Plaintiff has failed to substantiate his right to deduct the litigation expenses, the Court need not resolve the issue of whether Primco's payment of the expenses may be treated as a constructive distribution, or whether Alfred Goldman should otherwise be treated as having paid the legal fees and accounting fees at issue.

### VIII. *Conclusion.*

In light of the Plaintiffs' concessions, the Government's motion for summary judgment is hereby GRANTED with respect to the claims asserted on behalf of Arthur W. Mires, as Trustee of the Monte H. Goldman Revocable Living Trust; Julian P. Kornfeld, Trustee of the Alfred Dreyfus Goldman Revocable Living Trust; Arthur W. Mires, Trustee of the Margaret K. Goldman Trust for Monte H. Goldman; Arthur W. Mires, Trustee of the Jack Katz Trust for Monte H. Goldman; Arthur W. Mires, Trustee of the S.N. Goldman Trust

---

**26.** *See Rolwing–Moxley Co. v. United States,* 452 F.Supp. 385 (E.D.Mo.1978) (District court had jurisdiction over taxpayer's claim for refunds for three tax years for which taxpayer had not filed refund claims where the jurisdictional defect had been cured by filing claims for refunds and by filing a first amended complaint); *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (Jurisdictional defect arising when case was removed in the absence of complete diversity was cured before trial commenced when the non-diverse defendant settled the claim against it and was dismissed as a defendant); *Pinkard v. Pullman–Standard, a Division of Pullman, Inc.,* 678 F.2d 1211, 1215 (5th Cir.1982) (Failure to obtain a right-to-sue letter before filing Title VII suit can be cured after filing suit); *Jones v. American State Bank,* 857 F.2d 494, 499—500 (8th Cir.1988) (Receiving a right-to-sue letter is not a jurisdictional prerequisite to filing an action, but rather, is a condition precedent curable after the action has commenced). *Cf., Duplan v. Harper,* 188 F.3d 1195 (10th Cir.1999) (Complaint filed prior to exhaustion of administrative remedies under the Federal Tort Claims Act could not be cured through amendment; allowing claimants to bring suit under the Act before exhausting administrative remedies would render the exhaustion requirement meaningless and impose unnecessary burden on judicial system).

for Monte H. Goldman; Arthur W. Mires, Trustee of the S.N. Goldman Trust for the Children of Monte H. Goldman; Julian P. Kornfeld, Trustee of the Monte H. Goldman Trust for Alfred D. Goldman; Julian P. Kornfeld, Trustee of the S.N. Goldman Trust for Alfred D. Goldman; Julian P. Kornfeld, Trustee of the S.N. Goldman Trust for Alfred Dreyfus Goldman; Arthur W. Mires, Trustee of the S.N. Goldman Irrevocable Trust for Monte H. Goldman; and Julian P. Kornfeld, Trustee of the S.N. Goldman Trust for the Children of Alfred D. Goldman. The Court finds that the remaining Plaintiff, Julian P. Kornfeld, Executor of the Estate of Alfred D. Goldman, has failed to substantiate the amount of the deductions for which he seeks a refund. Accordingly, the Government's motion for summary judgment is hereby GRANTED.[27] The Plaintiffs' motion for summary judgment is hereby DENIED.[28]

---

27. Document No. 30.

28. Document No. 33.